## BOARD OF EDUCATION OF THE CITY OF BRIDGEPORT *v.* ST. PAUL FIRE AND MARINE INSURANCE COMPANY (SC 16490)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

---

Argued December 5, 2001—officially released July 23, 2002

*Arthur C. Laske III*, assistant city attorney, for the appellant (plaintiff).

*Anthony R. Zelle*, pro hac vice, with whom was *Linda L. Morkan*, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. This case, which comes to us upon our acceptance of a certified question from the United States District Court for the District of Connecticut, requires us to decide whether the defendant, St. Paul Fire and Marine Insurance Company, is obligated to defend and indemnify the plaintiff, the board of education of the city of Bridgeport, in a civil action brought against it arising out of the alleged sexual assault of a student following her departure from a school bus owned by the plaintiff and driven by one of the plaintiff's

employees. We answer the certified question in the affirmative.

The plaintiff brought this breach of contract action in the Superior Court after the defendant refused to provide the plaintiff with a defense in the underlying litigation. The defendant removed the present case to the United States District Court for the District of Connecticut. Subsequently, the plaintiff and the defendant moved for partial summary judgment on the issue of whether the defendant was required to defend and indemnify the plaintiff. The District Court denied both motions without prejudice and, pursuant to General Statutes § 51-199b (d), certified a question of law to this court.[1] We conclude that the defendant must provide a defense to the plaintiff in the underlying action, and also must indemnify the plaintiff should the plaintiff become obligated to pay a judgment arising out of certain of the allegations of negligence in that action.

In the complaint in the underlying action (Doe complaint), Jane Doe and her mother, Mary Doe, made the following allegations. In 1996, Jane Doe was a seventeen year old special education student attending Bassick High School in Bridgeport. After being transported to Bassick High School on a school bus owned by the plaintiff and operated by one of its employees, Jane Doe exited the bus and entered a ladies' room inside the school. A fellow special education student who also was on the bus followed Jane Doe into the ladies' room and sexually assaulted her. The Doe complaint alleged,

---

[1] We accepted the following question from the District Court: "Under a policy of automobile insurance that provides for the 'ownership, maintenance or use' of a covered automobile, does the insurer have a duty to defend/indemnify the plaintiff board of education which has been sued by a special education student who was sexually assaulted after disembarking from a school bus?" *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, United States District Court, Docket No. 3:98CV00811 (AWT) (D. Conn. November 27, 2000).

inter alia, that the bus driver's negligence in allowing the students to disembark from the school bus and enter the school building unsupervised gave rise to Jane Doe's injuries.[2] The Doe complaint also alleged that Mary Doe incurred financial loss for expenditures for Jane Doe's medical and psychological treatment because of the plaintiff's negligence.

After the Does initiated the underlying action, the plaintiff filed a claim under the commercial automobile liability insurance policy (policy) issued to it by the defendant, requesting that the defendant defend and indemnify the plaintiff in the Does' action. The defendant denied the claim, asserting that because the alleged incident did not result from the use of the school bus, the defendant had no duty to defend or indemnify the plaintiff under the terms of the policy. The plaintiff then initiated this action.

The first issue presently before us is whether, under the terms of the policy issued by the defendant, the defendant has a duty to defend the plaintiff in the action brought against it by the Does. "[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Internal quotation marks omitted.) *Hansen* v. *Ohio Casualty Ins. Co.*, 239 Conn. 537, 543, 687 A.2d 1262 (1996). Moreover, "[t]he principles governing our determination of this issue are well settled. [A]n insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully

---

[2] Although the plaintiff had established a policy that required school bus drivers to deliver special education students into the hands of school personnel, in the absence of anything in the record before this court demonstrating knowledge of the policy by the bus driver, that policy plays no role in our analysis.

maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend." (Internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 398, 757 A.2d 1074 (2000).[3] We must, therefore, compare the allegations contained in the Doe complaint with the language of the policy to determine whether the defendant is required to defend the plaintiff in the underlying litigation.

Paragraph five of count eleven of the Doe complaint alleges in relevant part that "[t]he [bus driver] was negligent in that he . . . (b) Allowed students to depart from his bus, who were unsupervised, although he knew or should have known that said students were required to be supervised from the bus to the school . . . ."[4] The relevant policy language provides: "Bodily injury and property damage liability. [The defendant will] pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that: *results from* the ownership, maintenance, *use*, loading or unloading of a covered auto; and is caused by an accident that happens while this agreement is in effect." (Emphasis added.)

---

[3] We point out that the issue of whether the bus driver was in fact negligent ultimately will be decided by the trier of fact. Our analysis is based on the allegations of the Doe complaint and not on the likelihood that the Does will prevail at trial.

[4] We read this allegation broadly as a general allegation of negligence, without regard to the plaintiff's policy concerning the disembarkation of special education students from school buses. See footnote 2 of this opinion.

Resolution of the certified issue in this case thus turns on whether the injuries alleged in the Doe complaint resulted from the "use" of the school bus within the meaning of the policy language. More specifically, the plaintiff claims that because the appropriate standard of care required the bus driver to keep the students on the bus until their discharge into the supervision and care of school personnel, the alleged harm resulted from the use of the school bus within the meaning of the policy language. The defendant claims, however, that the bus was not being used when the alleged harm occurred, that the alleged harm was not causally related to the use of the school bus, and, therefore, that the allegations of the complaint do not fall within the coverage afforded by the policy. We agree with the plaintiff that the allegation of negligence contained in paragraph 5 (b) of count eleven of the Doe complaint cited previously sets forth a cause of action arising out of the use of the bus within the coverage of the policy. Accordingly, we conclude that the defendant has a duty to defend the plaintiff in the civil action brought against it by the Does.

We begin by interpreting the policy language in order to determine whether, at the time of the plaintiff's alleged negligence, the bus was being used in a manner contemplated by the policy. "The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordi-

nary meaning . . . ." (Internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, supra, 254 Conn. 399.

In construing the policy language, we are guided by the well established principle that the term "use" with reference to motor vehicles is to be interpreted broadly. "The term 'use' is the general catch-all of the insuring clause, designed and construed to include *all proper uses of the vehicle* not falling within one of the previous terms of definition." (Emphasis added.) 6B J. Appleman & J. Appleman, Insurance Law and Practice (1979) § 4316, pp. 341–42; see 8 G. Couch, Insurance (3d Ed. 1997) § 119:37, pp. 55–56 ("[t]he term 'use' must be understood in its most comprehensive sense; and the term is not confined to motion on the highway, but extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured"); see also *Pacific Employers Ins. Co.* v. *Michigan Mutual Ins. Co.*, 452 Mich. 218, 226–29, 549 N.W.2d 872 (1996) ("'Use' is defined more broadly than the mere carrying of persons and, while it encompasses the 'operation' of the bus, it may also include a range of activity unrelated to actual driving. . . . [T]he term 'use' in the phrase 'arising out of the ownership, maintenance, or use' of a school bus includes disembarking school children . . . at the predetermined location." [Citation omitted.]).[5] "The determination of whether an

---

[5] The defendant claims that the analysis of the word "use" contained in *Pacific Employers Ins. Co.* is not authoritative because the court in that case relied upon a decision of the Georgia Appellate Court that was later reversed by the Georgia Supreme Court. See *Burke County School District* v. *Roberts*, 220 Ga. App. 510, 469 S.E.2d 529 (1996), rev'd, 267 Ga. 665, 482 S.E.2d 283 (1997). The defendant correctly notes that the Georgia Supreme Court, in reversing the Appellate Court, criticized the latter's treatment of the word "use" as overly broad. See *Roberts* v. *Burke County School District*, 267 Ga. 665, 668, 482 S.E.2d 283 (1997). In doing so, however, the Georgia Supreme Court relied heavily upon the fact that the negligent acts in that case occurred *outside* the confines of the school bus. The court stated: "Here, the trial court concluded that the acts of negligence were the school

act constitutes 'use' of a motor vehicle [is] . . . very fact specific. When determining the meaning of the term 'use' in an automobile insurance policy, a court must examine the factual circumstances of each case, including the particular characteristics of the vehicle." 6B J. Appleman & J. Appleman, Insurance Law and Practice (Cum. Sup. 2001) § 4316, p. 88.

At oral argument in this court, the defendant conceded that delivering students safely to a particular physical location is a use of the school bus within the meaning of the policy, and further admitted that the use of the school bus ends *after* the students depart from the bus. The defendant argues, however, that delivering students into the hands of school personnel, as the Doe complaint alleges was required of the bus driver under the appropriate standard of care, is not a use of the school bus within the meaning of the policy language. We disagree.

We can discern no principled basis for distinguishing between a situation where a bus driver is required to discharge students safely at a specified physical location and one where the students are to be discharged safely into the care of school personnel. In both cases, the bus driver is required to use the school bus as a safety device within which the students remain until they can leave the bus safely. The negligence alleged in the Doe complaint is based upon the claim that the bus driver negligently allowed the students to alight from the bus without the supervision of school person-

district's selection and implementation of the unsafe route and its training and supervision of the bus driver. *Such conduct is removed from the actual operation of the school bus."* (Emphasis added.) Id., 667–68. In contrast, in both the present case and *Pacific Employers Ins. Co.*, the focus of the negligence claims is on the *bus driver's* negligence in allowing students *to depart from* the bus. Thus, the negligent act actually occurred on the bus. We therefore conclude that *Roberts* is factually distinguishable from both the present case and *Pacific Employers Ins. Co.*

nel. Therefore, the alleged negligent act occurred on the bus, and involved allowing the students to depart from the physical confines thereof without waiting for school personnel to escort them into the school. Indeed, because the present case involves special education students who necessarily require extra supervision, the importance of the school bus as a safety device is heightened. The connection between the bus driver's alleged negligence and the injury complained of in the present case is thus sufficient to establish that, at the time of the incident in question, the bus was being used in a manner contemplated by the policy.

Our inquiry regarding the defendant's duty to defend, however, does not end here. Having determined that the allegations of the complaint concerning the use of the bus were sufficient to bring the plaintiff's conduct within the purview of the policy, we must now decide whether the allegations of the harm suffered by the Does are sufficient to demonstrate a causal connection with the use of the bus. The defendant advances two arguments in an attempt to show the insufficiency of such a causal connection. First, it postulates that the alleged assault was the independent act of a third party. Second, the defendant claims that, because the assault occurred within the school building, the connection between the use of the bus and the injury itself is too attenuated for the imposition of liability upon the plaintiff. We reject these arguments, which we address in turn.

We first address the defendant's argument that the intentional assault on Jane Doe superseded the negligence of the bus driver as the cause of Jane Doe's injuries. "The function of the doctrine of superseding cause is not to serve as an independent basis of liability, regardless of the conduct of a third party whose negligent conduct may have contributed to the plaintiff's loss. The function of the doctrine is to define the circum-

stances under which responsibility may be shifted entirely from the shoulders of one person, who is determined to be negligent, to the shoulders of another person, who may also be determined to be negligent, or to some other force. A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." (Internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 179, 700 A.2d 38 (1997).

All of the cases the defendant cites in support of its theory that the intentional assault on Jane Doe was an intervening, superseding cause involve situations in which the causal relationship between the intentional harm and the use of the vehicle was wholly fortuitous. More specifically, in each case, the court concluded that the intentional harm did not arise out of the use of the vehicle because the only connection between the use of the vehicle and the harm was the fact that the intentional act causing the harm occurred in or near the vehicle.[6] Such cases are unpersuasive for purposes of the present case, however, because the plaintiff's negligence in using the bus was instrumental in providing an opportunity for the assault to occur. The Doe complaint alleges that, following her departure from the school bus, Jane Doe was followed into a bathroom in the school and assaulted by a fellow special education

---

[6] See, e.g., *Currera* v. *Loyd*, 531 So. 2d 544, 546 (La. App. 1988) (no causal connection between use of vehicle and harm to victim where victim kidnapped, sexually assaulted and murdered after being driven away in assailant's truck); *Kangas* v. *Aetna Casualty & Surety Co.*, 64 Mich. App. 1, 17, 235 N.W.2d 42 (1975) (no causal connection where assailants alighted from car and assaulted victim on highway); *Doe* v. *South Carolina State Budget & Control Board*, 329 S.C. 214, 217–19, 494 S.E.2d 469 (1997) (finding no causal connection between use of patrol car and police officer's sexual assault where officer used car to make traffic stop, and subsequently assaulted victim on and in car).

student who also had been discharged from the bus. Had the bus driver acted in accordance with the appropriate standard of care, both Jane Doe *and* her assailant would have remained on the bus until their release into the hands of school personnel. It is precisely because of the plaintiff's alleged negligence, therefore, that Jane Doe was left, unsupervised, in the company of her assailant. Thus, this is not a case in which the allegations of the underlying complaint reveal that the injury only could have resulted from the wholly independent act of a third party. Instead, the allegations show that the negligence of the bus driver was the operative event giving rise to the assault on Jane Doe. See *Merhi* v. *Becker*, 164 Conn. 516, 522–23, 325 A.2d 270 (1973) (intentional act of third party not superseding cause where intentional act was within scope of risk created by defendant's negligence); *Home State Ins. Co.* v. *Continental Ins. Co.*, 313 N.J. Super. 584, 594, 713 A.2d 557 (App. Div. 1998) (concluding that injury from intentional assault on school bus arose out of use of bus where it was alleged that bus driver was negligent in failing to quell altercation and therefore was contributing factor to harm suffered by plaintiff).

The defendant's second argument, namely, that the alleged locus of the injury itself removes the plaintiff's negligence from the realm of a sufficient causal nexus, also fails because it is based upon principles of legal or proximate causation that are inapposite to the causation issue in the present case. Issues of proximate cause and supervening cause will be decided ultimately by the fact finder in the underlying action. Our inquiry is limited to whether the allegations of the Doe complaint are sufficient to bring the claim within the scope of the policy.

In *Hogle* v. *Hogle*, 167 Conn. 572, 356 A.2d 172 (1975), this court had the opportunity to analyze policy language similar to that at issue in the present case while

discussing an exclusionary clause in a homeowner's insurance policy. In *Hogle*, the court stated that "it is generally understood that for liability for an accident or an injury to be said to 'arise out of' the 'use' of an automobile for the purpose of determining coverage under the appropriate provisions of a liability insurance policy, it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of the automobile, in order to meet the requirement that there be a causal relationship between the accident or injury and the use of the automobile." Id., 577. Under this standard of causation, it need not be shown that the incident in question was proximately caused by the vehicle for coverage to attach. See 6B J. Appleman & J. Appleman, Insurance Law and Practice (Cum. Sup. 2001) § 4316, p. 88; see also *Federal Ins. Co.* v. *Tri-State Ins. Co.*, 157 F.3d 800, 804 (10th Cir. 1998) (citing cases from other jurisdictions). Thus, the plaintiff in the present case need not allege that the school bus itself was the locus of the injury in order to prove causation under the language of the policy. The plaintiff must allege only that the injury originated in, grew out of, or flowed from the use of the vehicle. Given the alleged connection, discussed previously herein, between the use of the bus and the alleged injuries to Jane Doe, the fact that the injury occurred away from the bus does not, in and of itself, show the insufficiency of the causal nexus between the alleged injury and the use of the bus.

Having concluded that the defendant has a duty to defend the plaintiff in the underlying litigation, we turn to the issue of whether the defendant has a duty to indemnify the plaintiff pursuant to the policy. "In contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to

indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." *Home Ins. Co.* v. *St. Paul Fire & Marine Ins. Co.*, 229 F.3d 56, 66 (1st Cir. 2000). We previously have determined that the negligent conduct alleged in paragraph 5 (b) of count eleven of the Doe complaint, if proven, would fall within the parameters of coverage under the policy. Accordingly, if the Does establish that the bus driver was negligent in allowing students to leave the bus while unsupervised, and such negligence was the proximate cause of the Does' losses, the defendant will have a duty to indemnify the plaintiff pursuant to the policy.

The certified question that we were asked to answer is: "Under a policy of automobile insurance that provides for the 'ownership, maintenance or use' of a covered automobile, does the insurer have a duty to defend/indemnify the plaintiff board of education which has been sued by a special education student who was sexually assaulted after disembarking from a school bus?" Our answer is: Yes.

No costs shall be taxed in this court to either party.

In this opinion the other justices concurred.