HARTFORD CASUALTY INSURANCE COMPANY ET AL. *v.* LITCHFIELD MUTUAL FIRE INSURANCE COMPANY
(SC 17146)
(SC 17147)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

---

458

Argued January 4—officially released July 19, 2005

*Susan L. Miller*, with whom, on the brief, was *Joel J. Rottner*, for the appellant in Docket No. SC 17146, appellee in Docket No. SC 17147 (defendant).

*Philip F. von Kuhn*, for the appellees in Docket No. SC 17146, appellants in Docket No. SC 17147 (plaintiffs).

*Opinion*

VERTEFEUILLE, J. These appeals arise from an action in which the plaintiffs, Hartford Casualty Insurance Company (Hartford Casualty) and Mitch Wylie, sought a declaratory judgment that the defendant, Litchfield Mutual Fire Insurance Company, had a duty both to defend and to indemnify Wylie pursuant to an insurance policy that it had issued to Wylie. Upon their appeals following our grants of certification, the defendant challenges the Appellate Court's judgment concluding in part that the defendant had a duty to indemnify Wylie, and the plaintiffs challenge the Appellate Court's judgment concluding in part that the defendant had no duty to defend Wylie. We conclude that the defendant had a duty to defend Wylie and that, under the circumstances of the present case, it also had a duty to indemnify him. Accordingly, we reverse the judgment of the Appellate Court as to the plaintiffs' appeal and affirm the judgment of the Appellate Court as to the defendant's appeal.

The Appellate Court's decision sets forth the following undisputed facts and procedural history. "On March 15, 1997, Hartford Casualty issued a homeowner's insurance policy to Wylie for a term of one year. On June 27, 1997, [the defendant] issued two insurance policies, a commercial premises only policy to Wylie as owner of 309 Albany Turnpike [in Canton] and an identical policy to [Strictly Dirt, Inc. (Strictly Dirt)], as lessee of the subject property. Wylie was the president and sole stockholder of Strictly Dirt, a company engaged in the business of buying and selling dirt bikes, dirt bike parts and accessories.

"On February 21, 1998, two year old Samantha Bard was bitten by Wylie's dog while on the premises of [Strictly Dirt]. On February 14, 2000, Bard, through her parent and next friend, Stacey Busque; Stacey Busque individually; and Troy Bard filed a thirty count complaint against Wylie and [Strictly Dirt] [Bard action] seeking damages in connection with the dog bite incident. Fifteen counts were directed against Wylie as the owner and/or keeper of the dog and fifteen counts were directed against [Strictly Dirt] as the owner and/or keeper of the dog on its business premises. The defendant defended [Strictly Dirt] but refused to defend Wylie. Hartford Casualty defended Wylie and ultimately settled all claims against him.[1] While the dog bite suit was pending, Hartford Casualty and Wylie filed the present declaratory judgment action seeking a judgment that [the defendant] had a duty to defend and indemnify Wylie in the dog bite suit, that the coverage under the two commercial policies issued by [the defendant] was primary and that the coverage under the homeowner's

---

[1] Hartford Casualty settled the case against Wylie for a total of $230,000, and incurred $6872 in attorney's fees for the defense of the action. After paying the settlement, the plaintiffs amended their complaint against the defendant, specifically alleging that the defendant was obligated to reimburse Hartford Casualty for the amount of the settlement and all attorney's fees incurred.

policy issued by Hartford Casualty was excess." (Internal quotation marks omitted.) *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 80 Conn. App. 364, 367–68, 835 A.2d 91 (2003).

The plaintiffs thereafter filed a motion for summary judgment with respect to the defendant's duty to defend Wylie, and the defendant filed a cross motion for summary judgment, asserting that Wylie's policy did not provide coverage for the injury alleged in the Bard action. The trial court granted the defendant's motion for summary judgment and denied the plaintiffs' motion. The plaintiffs appealed from the judgment to the Appellate Court, which concluded that the defendant did not have a duty to defend Wylie in the dog bite action, but it did have a duty to indemnify him for that claim. Thereafter, we granted the defendant's petition and the plaintiffs' cross petition for certification to appeal, limited to the following questions: "Did the Appellate Court properly conclude that the defendant had a duty to indemnify . . . Wylie?" *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 268 Conn. 912, 845 A.2d 414 (2004); and "Did the Appellate Court properly conclude that the defendant had no duty to defend . . . Wylie?" *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 268 Conn. 913, 845 A.2d 414 (2004).

The plaintiffs claim that the Appellate Court improperly concluded that the defendant did not have a duty to defend Wylie. Specifically, the plaintiffs claim that the insurance policy issued by the defendant provides that the defendant will defend the insured when a complaint is made that *may* be covered under the policy. The complaint against Wylie alleged that the injured child was an invitee at Wylie's place of business, so the plaintiffs contend that there was at least the possibility that the injury occurred as a result of Wylie's business conduct. Thus, the plaintiffs claim that the allegations

in the complaint were sufficient to have invoked the defendant's duty to defend. Further, the plaintiffs contend that the defendant continued to refuse to defend Wylie even after it became clear through information provided by Wylie that the alleged dog bite injury fell within the policy coverage.

The defendant responds that Wylie and Strictly Dirt requested only "owners, landlords, [and] tenants" liability coverage, not general liability coverage, and that, absent an allegation suggesting a connection between the dog and the premises of Strictly Dirt, the defendant had no duty to defend Wylie. The defendant further claims that the underlying complaint in the Bard action against Wylie did not allege that Wylie was an employee of Strictly Dirt or that he kept the dog for business purposes. The defendant asserts that, because the Bard action was based only on Wylie's personal ownership of the dog, it did not come within the coverage provided by the defendant's commercial policy, and the defendant had no obligation to defend Wylie. Finally, the defendant contends that the underlying complaint did not relate to Wylie's ownership of the dog, to his ownership or maintenance of the insured premises, or any operations that were necessary or incidental to the insured premises, and that the policy issued by the defendant covers only liability that arises from the use or condition of the insured building, *not* any and all liability incurred by Wylie. We agree with the plaintiffs in their appeal, and conclude that the defendant did have a duty to defend Wylie in the Bard action. We further conclude that, because the defendant breached its duty to defend Wylie, it is liable for the cost of the defense as well as the amount of the settlement.

We begin by setting forth the well settled standard of review for interpreting insurance contracts. "[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo."

(Internal quotation marks omitted.) *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 40, 801 A.2d 752 (2002). "It is the function of the court to construe the provisions of the contract of insurance. . . . The [i]nterpretation of an insurance policy . . . involves a determination of the intent of the parties as expressed by the language of the policy . . . [including] what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . [A] contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy . . . [giving the] words . . . [of the policy] their natural and ordinary meaning . . . [and construing] any ambiguity in the terms . . . in favor of the insured . . . ." (Internal quotation marks omitted.) *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 351–52, 773 A.2d 906 (2001).

In construing the duty to defend as expressed in an insurance policy, "[t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend." (Internal quotation marks omitted.) *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, supra, 261 Conn. 40–41. "If an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." (Emphasis added; internal quotation marks omitted.) *Moore* v. *Continen-*

*tal Casualty Co.*, 252 Conn. 405, 409, 746 A.2d 1252 (2000).

This court has concluded consistently "that the duty to defend means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury covered by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact covered. The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is groundless." (Internal quotation marks omitted.) *Keithan* v. *Massachusetts Bonding & Ins. Co.*, 159 Conn. 128, 139, 267 A.2d 660 (1970); see also *Flint* v. *Universal Machine Co.*, 238 Conn. 637, 647, 679 A.2d 929 (1996). Further, "[i]t is well established . . . that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." (Internal quotation marks omitted.) *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 256 Conn. 352. An insurer, therefore, is not excused from its duty to defend merely because the underlying complaint does not specify the connection between the stated cause of action and the policy coverage. Thus, the relevant question is whether the party claiming coverage is an insured party in the capacity in which he was sued.

With these principles in mind, we turn to the plaintiffs' appeal. In deciding whether the defendant was obligated to defend Wylie in the Bard action, we begin by examining the language of the applicable policy. The defendant issued two relevant policies, one providing Wylie, the owner of the property, with premises liability coverage, and one providing Strictly Dirt with business

liability coverage. The defendant could be obligated to defend Wylie either under his own premises policy or under the Strictly Dirt policy if Wylie is considered an "insured" under that policy. Although it may be possible to construe either policy to invoke the defendant's duty to defend Wylie in the present case, we will specifically examine the applicability of the Strictly Dirt policy.

The policy issued to Strictly Dirt provides that the defendant has a "duty to defend a suit seeking damages for bodily injury or property damage which may be covered under the Commercial Liability Coverage." The policy further provides: "We pay all sums which an insured becomes legally obligated to pay as damages due to bodily injury or property damage to which this insurance applies. The bodily injury or property damage must be caused by an occurrence and arise out of the ownership, maintenance or use of the insured premises or operations that are necessary or incidental to the insured premises." With this language in mind, we must determine whether the complaint in the Bard action alleged an injury that *might* be covered under the Strictly Dirt policy.

In the first count of the complaint against Wylie and Strictly Dirt, it was alleged that Wylie "was the owner and keeper of a dog" that bit Samantha Bard. In the sixth count of the complaint, it was alleged that Strictly Dirt operated a business at the premises and that Samantha Bard was "an invitee lawfully on the premises of [Strictly Dirt] when she was violently attacked and bitten by a dog on the left side of her face." In paragraph seven of the eleventh count, it further was alleged that Wylie was negligent or careless in that he "allowed the dog to wander and roam around not properly or sufficiently leashed or attended . . . he failed to keep the dog under control . . . he failed to warn [Samantha Bard] of the dangerous propensity of the dog or of its tendencies to bite or otherwise harm people . . . he

failed to tell [Samantha Bard] not to play with or touch the dog, or otherwise warn or caution her from doing so . . . he knew or should have known that the dog may have been aggressive and violent under the circumstances . . . he failed to put the dog in a location which would not be accessible or potentially harmful to [Samantha Bard] . . . [and] he failed to take any action and steps necessary to prevent the dog from attacking [her] . . . ."

As a rule, this court construes broad policy language in favor of imposing a duty to defend on the insurer. See *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 256 Conn. 351–52. In the present case, the policy language does not specify anything more than that the incident causing the damage must arise from the use of the insured premises. It is clear from the language of the complaint in the Bard action that the injury was alleged to have taken place on the business premises of Strictly Dirt, where the child was an invitee, and where Wylie and his dog were also located. The complaint thus creates at least the *possibility* that the underlying action against Wylie falls within the broad "use of the premises" coverage in the Strictly Dirt policy. See *Moore* v. *Continental Casualty Co.*, supra, 252 Conn. 409.

The defendant's duty to defend, however, is not invoked unless the party named in the complaint falls within the definition of "insured" as included in the policy. The policy covering Strictly Dirt defines insured in part as "your employees, for acts within the scope of their employment by you (this does not include your executive officers)." Thus, in order to trigger the defendant's duty to defend, Wylie must have been acting as an employee at the time of the dog bite incident. An "insurer may be obligated to provide a defense not only based on the face of the complaint but also if any facts known to the insurer suggest that the claim falls within

the scope of coverage. . . . Where the insurer has sufficient knowledge to show that a claim falls within coverage even though not properly pleaded to [invoke] coverage, the carrier cannot make the face of the complaint argument . . . ." (Internal quotation marks omitted.) J. Stempel, Insurance Contract Disputes (2d Ed. 1999) § 9.03[a], pp. 9-58 through 9-58-1. We agree with the New York Court of Appeals that we should not employ a "wooden application of the 'four corners of the complaint' rule [that] would render the duty to defend narrower than the duty to indemnify" and that "the sounder approach is to require the insurer to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." *Fitzpatrick* v. *American Honda Motor Co.*, 78 N.Y.2d 61, 67, 575 N.E.2d 90, 571 N.Y.S.2d 672 (1991). After all, "the duty to defend derives from the insurer's contract with the insured, not from the complaint." *Employees' Ins. of Wausau* v. *Duplan Corp.*, 899 F. Sup. 1112, 1124 (S.D.N.Y. 1995).

In the present case, the defendant had available to it multiple sources of information indicating that Wylie was an employee of Strictly Dirt, and hence within the definition of "insured" in the policy. First, the applications for insurance for both the Strictly Dirt and Wylie policies set forth information regarding Wylie's role at Strictly Dirt. In the application for the Wylie policy, the defendant indicated that Strictly Dirt would rent space from Wylie, and Wylie would then operate the store from the premises. Further, in the application for the Strictly Dirt policy, Wylie is listed as the application contact, and he signed the form as the applicant for insurance, which should have alerted the defendant to the fact that there was at least a possibility that Wylie was an employee of Strictly Dirt.

Moreover, the defendant continued to deny a defense to Wylie even after it had received further information

indicating that the complaint in the Bard action implicated Wylie as an insured employee of Strictly Dirt. Wylie provided deposition testimony that he was employed by Strictly Dirt on the date of the dog bite incident. He further stated in an affidavit that he was conducting business with a customer at Strictly Dirt when the dog bite incident occurred. In his affidavit, Wylie stated that, from the time he had purchased the dog in 1998, he routinely had taken the dog to work with him, and that he considered the dog to be a benefit to the business, because Strictly Dirt customers liked the dog. Further, Wylie testified during his deposition that he took the dog with him to Strictly Dirt every day, and a customer painted a picture of the dog that hung prominently outside Strictly Dirt, because customers often came into the shop to see the dog. Thus, in addition to the complaint itself, the defendant had further evidence alerting it to the fact that the dog bite action against Wylie arose out of Wylie's employment at Strictly Dirt.

The defendant claims that Wylie's ownership of the dog is not related to his use of the insured premises, and accordingly, it does not have a duty to defend Wylie. We disagree. The defendant's duty to defend Wylie arose simply because Wylie falls within the definition of those "insured" under the Strictly Dirt policy, and the claim in the complaint in the Bard action is the type covered by the policy. This court has adopted "a widely recognized definition of [use], [under which] an insured uses property . . . where he puts [the property] to his own service or to the purpose for which it was ordinarily intended." (Internal quotation marks omitted.) *Alderman* v. *Hanover Ins. Group*, 169 Conn. 603, 607, 363 A.2d 1102 (1975). The dog bite incident alleged in the Bard action is sufficiently related to Wylie's use of the Strictly Dirt premises simply because at the time of the

incident Wylie was conducting his ordinary business as covered by the policy.

Further, it is irrelevant to the duty to defend that the defendant may discover during the course of the proceedings that Wylie was not acting within the scope of the policy's coverage at the time of the dog bite incident. The defendant could have both fulfilled its duty to defend Wylie and protected its right to contest whether the dog bite incident actually was covered by the Strictly Dirt policy by "defend[ing] under a reservation of its right to contest coverage under the various avenues which would subsequently be open to it for that purpose." (Internal quotation marks omitted.) *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 153, 681 A.2d 293 (1996). The fact that the allegations against Wylie possibly could fall within the coverage of the Strictly Dirt policy is sufficient to trigger the defendant's duty to defend Wylie, even if the defendant suspected that it would later discover facts that would ultimately relieve it of its duty to indemnify Wylie.

Although the defendant contends that the Strictly Dirt policy is an "owner, landlord, tenant" policy, which does not provide general liability coverage, the policy language itself does not reflect that limitation on coverage. The defendant is imposing a business purpose requirement on its duty to defend that is not in the text of the policy. The mere fact that Samantha Bard sustained her injuries while on the premises of Wylie's business and while Wylie was serving in his insured employment capacity is sufficient to fulfill the requirement in the policy that the injury "be caused by an occurrence and arise out of the ownership, maintenance or use of the insured premises or operations that are necessary or incidental to the insured premises." Thus, the defendant's assertion that there is an additional requirement that the underlying complaint suggests a relationship between the dog and the insured

premises is without merit. It is the role of this court to construe contracts based on the actual language of the policy. See *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 256 Conn. 351–52. Accordingly, a label attached by the insurer is irrelevant when the language itself indicates that Wylie should be covered in his defense against the underlying action.

We, therefore, conclude that the defendant did have a duty to defend Wylie in this case, because the language of the Strictly Dirt policy clearly covers Wylie in his capacity as an employee, and the complaint in the underlying action creates at least the possibility that Wylie was sued in his insured capacity. The success of the plaintiffs' appeal necessarily dictates the outcome of the defendant's appeal, because "[w]here an insurer is guilty of a breach of its contract to defend, it is liable to pay to the insured not only his reasonable expenses in conducting his own defense but, in the absence of fraud or collusion, the amount of a judgment [or settlement] obtained against the insured up to the limit of liability fixed by its policy." *Keithan* v. *Massachusetts Bonding & Ins. Co.*, supra, 159 Conn. 139; see also 7C J. Appleman, Insurance Law and Practice (1979) §§ 4689 through 4690. In the present case, Hartford Casualty paid $230,000 to settle the dog bite claim against Wylie and incurred $6872 in attorney's fees as a result of the defendant's failure to defend Wylie. The defendant is therefore liable to Hartford Casualty for those expenditures.

The judgment of the Appellate Court is reversed in part, and the case is remanded to that court with direction to remand the case to the trial court with direction to deny the defendant's motion for summary judgment and to grant the plaintiffs' motion for summary judgment and to render judgment thereon for the plaintiffs.

In this opinion the other justices concurred.