# MISITI, LLC, ET AL. *v.* TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ET AL.
### (AC 33243)

Robinson, Bear and Dupont, Js.

Argued October 20—officially released December 20, 2011

*Paul G. Roche*, for the appellant (named defendant).

*Jack G. Steigelfest*, for the appellees (plaintiffs).

*Opinion*

BEAR, J. In this declaratory judgment action, the defendant, Travelers Property Casualty Company of America (Travelers),[1] appeals both from the trial court's granting of summary judgment for the plaintiffs, Misiti, LLC (Misiti), and the Netherlands Insurance Company (Netherlands), and from the denial of its own motion for summary judgment.[2] On appeal, Travelers claims

---

[1] In addition to Travelers, the other named defendants were Church Hill Tavern, LLC, Christopher Ghista, E. Gaynor Brennan, Melissa DeMeglio, Elias Reynolds, Sarah Middeleer, Geoffrey Middeleer and Porco Construction Company, Inc. Those parties are not involved in this appeal.

[2] "Although the denial of a motion for summary judgment is not a final judgment and thus is not ordinarily appealable; see Practice Book § 4000 [now Practice Book § 61-1]; *Gurliacci* v. *Mayer*, 218 Conn. 531, 541 n.7, 590 A.2d 914 (1991); *Greengarden* v. *Kuhn*, 13 Conn. App. 550, 552, 537 A.2d 1043 (1988); the rationale for this rule is not applicable where both sides have filed motions for summary judgment and the court has granted one of them. *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 295 n.12, 596 A.2d 414 (1991). Thus, [an appellate court] may consider both of the summary judgment rulings contested by [an appellant] on appeal." *CTB Realty Ventures XXII, Inc.* v. *Markoski*, 33 Conn. App. 388, 391 n.3, 636 A.2d 379, cert. granted on other grounds, 228 Conn. 929, 640 A.2d 115 (1994) (appeal withdrawn July 18, 1994).

that the court improperly construed the insurance contract at issue in this case and determined that Travelers had a duty to defend Misiti in an underlying action. We agree and, accordingly, reverse the judgment of the trial court.

The parties submitted to the trial court a stipulation, which contains the following undisputed facts:[3]

"1. [The] plaintiffs seek the costs of defense and indemnity from Travelers with respect to the claims in an underlying lawsuit brought by Sarah and Geoffrey Middeleer[4] against Misiti . . . . That underlying suit has now settled.

"2. The third revised amended complaint in the underlying action . . . contains the following pertinent allegations:

"2. Misiti . . . was at all times relevant herein and is the owner of record of the real property, structures and improvements situated at, behind and

_____

[3] There was some disagreement during the trial court proceedings regarding the court's use of undisputed facts outside of the complaint in determining whether Travelers had a duty to defend Misiti. The court had requested that the parties submit to it a stipulation of facts. See generally *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 274 Conn. 457, 466–67, 876 A.2d 1139 (2005) ("[a]n insurer may be obligated to provide a defense not only based on the face of the complaint but also if any facts known to the insurer suggest that the claim falls within the scope of coverage" [internal quotation marks omitted]). Although Misiti voiced concern about the consideration of facts outside of those alleged in the underlying complaint, the parties complied with the court's request. On appeal, although both parties state that the allegations of the complaint control, they also agree that additional facts may be considered if those facts are relevant, were known to the insurer and broaden the duty to defend. See id. There is no claim on appeal that the trial court's use of stipulated facts in this case was improper. Accordingly, we assume, without deciding, that the court's use of the stipulated facts in determining whether Travelers had a duty to defend was proper. Furthermore, we conclude that the outcome of the case does not vary under either circumstance.

[4] For convenience, we refer to Sarah Middeleer as Middeleer, and to Sarah Middeleer and Geoffrey Middeleer as the Middeleers, throughout this appeal.

adjacent to the commercial buildings located at 1, 3 and 5 Glen Road, Sandy Hook, Connecticut ([Misiti's] 'premises').

"3. A portion of [Misiti's] premises . . . consisted of a steep retaining wall of over six (6) feet in height. Beneath the retaining wall located on [Misiti's] premises is the riverbed of the Pootatuck River.

"4. There was at all times relevant herein and is a wood guard consisting of a wooden fence of split-rail design located along the top of the above-described retaining wall.

"5. On July 22, 2008, [Middleleer] was a business invitee upon [Misiti's] premises.

"6. While . . . Middeleer leaned against the top rail of the wood guard, the top rail collapsed into pieces, causing [her] to fall off the retaining wall onto the rocks situated on the riverbed located below the retaining wall . . . .

"9. The purpose of [Misiti's] premises involved persons being invited onto [them] to do business with its commercial tenants.

"10. . . . Misiti . . . managed, operated, possessed and/or controlled the premises where the injury occurred at all times relevant herein.

"3. Travelers issued [an insurance policy] to Church Hill Tavern LLC dba Red Brick Tavern [(tavern)], 1 Glen Road, Sandy Hook . . . for the period May 3, 2008 to May 3, 2009.

"4. The policy contains the following additional insured endorsement that is the subject of the parties' motions [for summary judgment]:

'ADDITONAL INSURED—MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

1. Designation of Premises (Part Leased to You):

1 GLEN ROAD

SANDY HOOK CT 06482

2. Name of Person or Organization (Additional Insured):

MISITI, LLC

PO BOX 69

NEWTOWN CT 06470

3. Additional Premium: INCLUDED

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.' . . .

"5. The parties agree that the following language from the Policy's additional insured endorsement determines whether Misiti's status as an additional insured under the Travelers policy extends to the claim of . . . Middeleer: 'WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you [the tavern].'

"6. The parties dispute the legal question of the extent to which the court should consider facts outside the pleadings in deciding the cross motions for summary judgment, but do not dispute those facts. The remaining paragraphs of this stipulation are derived from facts outside the pleadings, the sources for which are exhibits attached to the parties' summary judgment papers.

"7. . . . Middeleer met her boss in the early evening of July 22, 2008, at Mocha Café, located at 3 Glen Road, part of Misiti's property, to prepare for a business presentation related to their work in the field of landscape design.

"8. Middeleer left her car in a parking lot on the Misiti property while she went to the business presentation.

"9. After the business presentation, Middeleer and her boss went back to the Misiti property where her car was located and decided to get something to eat at [the tavern] at 1 Glen Road . . . .

"10. Middeleer ate food and drank wine at the tavern.

"11. Upon leaving the tavern, Middeleer and her boss walked down a path along a river toward the parking area.

"12. As they approached the parking area, Middeleer and her boss did not take the branch of the path that led directly to where her car was parked, instead [they] continued to walk along the river in an open area beside the parking area, past a stage area, to look at the river and to look at a waterfall.

"13. Middeleer and her boss walked along the river until they reached the location of her fall through a fence.

"14. At the location of the fall, Middeleer was not on the paved path.

"15. Middeleer did not fall in the parking lot.

"16. The fall occurred on [Misiti's] 'premises,' that is, on 1, 3, and 5 Glen Road, as defined in the Middeleer complaint.

"17. Misiti owns the commercial buildings and property located at 1, 3 and 5 Glen Road, Sandy Hook, Connecticut.

"18. At the time of the incident, the [tavern] operated in a building located at 1 Glen Road pursuant to a lease with Misiti.

"19. The premises leased by Misiti to the tavern were the first floor of 1 Glen Road, together with a parking area to be used in common with others.

"20. The fence through which Middeleer fell was not located on the part of [Misiti's] premises leased to the tavern.

"21. The tavern had no control over and was not responsible for maintenance of the fence that gave way.

"22. The Newtown police department's medical assist report states, in part, the following: '[Middeleer's boss] stated that he and Middeleer had been walking through

the park discussing potential renovations to the property after a business meeting at the [tavern]. He stated that when Middeleer leaned against the top rail of the wooden fence it broke and she fell down into the water.'

"23. A Microsoft photo of the Misiti property, showing the tavern, parking lots and the path along the river, contains a distance measure showing the distance from the tavern, and from the parking area, to the site of the accident.

"24. A Google photo of the Misiti property area, which was an exhibit to the Middeleer deposition in the underlying case, and was an exhibit to Travelers' motion, shows the tavern, parking lots and the path along the river.

"25. A map of the Misiti property area, which was an exhibit to the Middeleer deposition in the underlying case, and was an exhibit to Travelers' motion, shows the tavern, parking lots and the path along the river.

"The foregoing facts are hereby agreed to by the parties and stipulated to as not being in dispute." (Citation omitted.)

We further set forth the relevant procedural history of this case, as explained by the trial court. "[T]he plaintiffs . . . commenced this action against the defendants[5] . . . seeking a determination that Misiti is an additional insured entitled to the protection of an insurance policy issued by Travelers with respect to an underlying action against Misiti brought by [the Middeleers]. Netherlands provided a defense to Misiti with respect to that underlying action. Subsequent to the filing of the present action, Netherlands settled [the] Middeleers' underlying claim within the limits of its policy. . . . Netherlands seeks reimbursement from

---

[5] See footnote 1 of this opinion.

Travelers for its defense costs and the amount paid in indemnification to settle the claim against Misiti. . . .

"Travelers filed the operative motion for summary judgment on the ground that there is no coverage for . . . Netherlands and Misiti based on the policy's additional insured endorsement, which provides for coverage 'only with respect to liability *arising out of* the ownership, maintenance or use of that part of the premises leased to [the tavern].' . . . Netherlands and Misiti filed the operative objection to Travelers' motion for summary judgment and cross motion for partial judgment as to liability. It is . . . Netherlands' and Misiti's position that the underlying incident is one 'arising out of' [the tavern's] use of that part of [Misiti's] premises leased to it that [implicated] Travelers' . . . duty to defend the underlying Middeleer action, and that as a result of its wrongful failure to do so, Travelers is liable to indemnify Netherlands up to the limits of its policy."

On the basis of the aforementioned facts, the court determined that Travelers had a duty to defend Misiti in the underlying action and, therefore, rendered judgment in favor of the plaintiffs. This appeal followed.

Travelers claims on appeal that the court improperly granted the plaintiffs' motion for summary judgment and denied its motion for summary judgment after concluding that Travelers had a duty to defend Misiti in the underlying lawsuit. We agree.

We begin by setting forth our well established standard of review. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . Our review of the trial court's

decision to grant [a] motion for summary judgment is plenary. . . . Moreover, [c]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Citations omitted; internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Continental Casualty Co.*, 273 Conn. 448, 455–56, 870 A.2d 1048 (2005).

"The question of whether an insurer has a duty to defend its insured [or additional insured] is purely a question of law, which is to be determined by comparing the allegations of [the injured party's] complaint with the terms of the insurance policy." *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 395, 757 A.2d 1074 (2000). "Whether the plaintiff ha[s] a duty to defend under the policy depends on whether, in light of the policy language, the complaints in the underlying . . . actions alleged conduct for which coverage was provided. [A]n insurer's duty to defend . . . is determined by reference to the allegations contained in the [injured party's] complaint. . . . The duty to defend an insured arises if the complaint states a cause of action [that] appears on its face to be within the terms of the policy coverage. . . . Because [t]he duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured . . . [i]f an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (Citations omitted; internal quotation marks omitted.) *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 323–24, 714 A.2d 1230 (1998). This is true "even [if] facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered . . . ." (Internal quotation marks omitted.) *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 352, 773 A.2d 906 (2001). We, therefore, must compare the allegations

contained in the Middeleers' complaint with the language of the policy to determine whether Travelers had a duty to defend in the underlying litigation. See *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 41, 801 A.2d 752 (2002). In this case, we also consider the facts to which the parties stipulated. See footnote 3 of this opinion.

In their operative complaint, the Middeleers alleged that Misiti was the owner of real property at, behind and adjacent to the buildings located at 1, 3 and 5 Glen Road, which they defined as Misiti's "premises." A portion of Misiti's premises "consisted of a steep retaining wall of over six (6) feet in height. Beneath the retaining wall located on [Misiti's] premises is the riverbed of the Pootatuck River. . . . There was . . . a wood guard consisting of a wooden fence of split-rail design located along the top of the . . . retaining wall." They also alleged that Middeleer was a business invitee on Misiti's premises and that when she "leaned against the top rail of the wood guard, the top rail collapsed into pieces, causing [her] to fall off the retaining wall onto the rocks situated on the riverbed located below the retaining wall . . . ."

The stipulation of facts provided further information that Middeleer had parked her vehicle in a parking lot on Misiti's premises and met her boss at the Mocha Café, located at the 3 Glen Road portion of Misiti's premises. Following that meeting, she went to a business presentation, leaving her car on Misiti's premises. After she and her boss returned from the presentation, they decided to have dinner at the tavern, located at the 1 Glen Road portion of Misiti's premises. "Upon leaving the tavern, Middeleer and her boss walked down a path along a river toward the parking area. . . . As they approached the parking area, Middeleer and her boss did not take the branch of the path that led directly to where her car was parked, instead continu[ing] to

walk along the river in an open area beside the parking area, past a stage area, to look at the river and to look at a waterfall. . . . Middeleer and her boss walked along the river until they reached the location of her fall through a fence. . . . At the location of the fall, Middeleer was not on the paved path."

The additional insured policy provision provided by Travelers to Misiti specifically states that coverage was provided "only with respect to liability arising out of the ownership, maintenance or use of that part of the [Misiti] premises leased to [the tavern] . . . ." The parties agree that resolution of this appeal turns on whether the injuries alleged by Middeleer arose or resulted from the use of the tavern within the meaning of the policy language. See *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, supra, 261 Conn. 41.

Travelers argues that it had no duty to defend Misiti in the underlying case because "liability did not arise out of the use of the leased premises." It explains: "In order to assess whether the policy provides coverage for the claims asserted in the underlying action, it is necessary to carefully examine this language to determine if the underlying complaint contains allegations that [Misiti's] liability arose out of . . . [the] *use* of the *leased premises*. In this case, the leased premises is the tavern. Thus, if the underlying complaint does not contain allegations concerning . . . [the] use of the [t]avern . . . then there is no additional insured coverage." (Emphasis in original.) The plaintiffs argue that "[u]nder Connecticut law, the phrase 'arising out of' found in an insurance provision is broadly construed to signify a minimal causal relation less than proximate causation." They contend that the complaint alleges such a causal relation.

We conclude that the underlying complaint, read alone or in combination with the stipulated facts, does

not allege that Middeleer's harm was causally related to the use of the tavern. Rather, those factual allegations say no more than that Middeleer's use of the tavern preceded her use of that separate part of Misiti's premises on which she was injured; according to the complaint and/or the stipulation those activities merely occurred in sequence.[6] Therefore, the allegations of the complaint, either alone or in combination with the stipulation, do not set forth a cause of action within the scope of coverage afforded by the policy. Accordingly, we conclude that Travelers did not have a duty to defend Misiti in the civil action brought against it by the Middeleers. See *Imperial Casualty & Indemnity Co.* v. *State,* supra, 246 Conn. 324 (duty to defend implicated when allegations of complaint arguably set forth cause of action within scope of coverage).

"[T]he term 'arising out of' is very broad . . . . '[I]t is generally understood that for liability for an accident or an injury to be said to "arise out of" [an occurrence], it is sufficient to show only that the accident or injury "was connected with," "had its origins in," "grew out of," "flowed from," or "was incident to" [that occurrence], in order to meet the requirement that there be

---

[6] As stipulated, there actually were four sequential activities on the date of the accident that were not alleged to be causally connected to Middeleer's accident and subsequent injuries. First, Middeleer met her boss at Mocha Café, located at 3 Glen Road, a separate part of Misiti's premises, to prepare for a business presentation related to their work in the field of landscape design. Second, Middeleer and her boss went to the business presentation away from Misiti's premises but Middeleer left her car in the parking lot on Misiti's premises. Third, after the business presentation, they returned to Misiti's premises and then decided to get something to eat at the tavern. Fourth, they left the tavern and walked on a portion of the Misiti premises separate from and leading away from the tavern, past the parking lot in which Middeleer's vehicle was located, to a scenic overlook. See paragraphs 3-13 of the stipulated facts as set forth in this opinion. There are no allegations causally connecting Middeleer's use of the tavern with her subsequent fall through the fence on a portion of Misiti's premises away from the physical location of the tavern.

a causal relationship between the accident or injury and [that occurrence].' *Hogle* v. *Hogle*, 167 Conn. 572, 577, 356 A.2d 172 (1975), and cases cited therein. To 'arise' out of means 'to originate from a specified source.' Webster's Third New International Dictionary (1961); see also Black's Law Dictionary (7th Ed. 1999) (defining 'arise' as '1. [t]o originate; to stem [from] . . . 2. [t]o result [from]'). 'The phrase arising out of is usually interpreted as indicat[ing] a causal connection.' . . . *Coregis Ins. Co.* v. *American Health Foundation*, United States Court of Appeals, Docket No. 99-9300 (2d Cir. February 14, 2001); see also *McGinniss* v. *Employers Reinsurance Corp.*, 648 F. Sup. 1263, 1267 (S.D.N.Y. 1986). Simply because we recognize, however, the breadth of the term 'arising out of' and often interpret coverage ambiguities in favor of the insured does not mean that we will 'obligate an insurer to extend coverage based . . . [on] a reading of the complaint that is . . . conceivable but tortured and unreasonable.' " *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 256 Conn. 373–74.

In the case of *Edelman* v. *Pacific Employers Ins. Co.*, 53 Conn. App. 54, 59, 728 A.2d 531, cert. denied, 249 Conn. 918, 733 A.2d 229 (1999), we reviewed the interpretation of a premises insurance policy that provided coverage for an innkeeper for injuries "arising out of the . . . use of . . . the premises . . . ." (Internal quotation marks omitted.) The case arose from an assault of a state trooper by an innkeeper who was resisting arrest following a domestic dispute. Id., 56. Although we recognized that the use of the phrase "arising out of the . . . use of . . . the premises" was a limitation on coverage, we held that the term "use" should be accorded its general meaning. Id., 60–61. We cited with approval the dictionary meaning of the term "use" to include "the legal enjoyment of property that consists in its employment, occupation, exercise, or

practice." (Internal quotation marks omitted.) Id., 61. On the facts of that case, we concluded that insurance coverage properly had been denied because the innkeeper's assault of a state trooper was not an ordinarily intended use of the insured premises. Id., 62. In *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, supra, 261 Conn. 37, our Supreme Court interpreted the term "use," in the context of a school bus, to include "all proper uses of the vehicle." Id., 43–45 (insurance coverage for sexual assault of student who was permitted to exit school bus without supervision by school personnel where assuring student safety upon disembarkation was included in proper use of bus within meaning of policy).

In the present case, we are called upon specifically to interpret the meaning of the phrase "arising out of the . . . use of that part of [Misiti's] premises leased to [the tavern]" as that phrase is set forth in the additional insured section of the tavern's policy of insurance. In accordance with our decisional precedent, we conclude that this phrase refers to liability originating, stemming or resulting from a person's legal or proper enjoyment of the tavern. See *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, supra, 261 Conn. 48; *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 256 Conn. 373–74; *Edelman* v. *Pacific Employers Ins. Co.*, supra, 53 Conn. App. 61.

Here, the facts establish that Middeleer parked her vehicle in a parking area on Misiti's premises. She then went to the Mocha Café with her boss to discuss a business presentation. Leaving her vehicle in the parking area, she next went to the business presentation, away from Misiti's premises, and returned to Misiti's premises thereafter. She and her boss then decided to have dinner at the tavern. When they finished dinner, they left the tavern and walked down a path, on a separate part of Misiti's premises, that went along the

river. Upon coming to a fork in the pathway, rather than taking the path that went to her vehicle in the parking area, they proceeded to walk along the river, past a stage area, where Middeleer eventually fell through a fence on an unpaved portion of Misiti's premises. After viewing the allegations set forth in the complaint, both alone and in combination with the stipulation, we conclude that there are no allegations that Middeleer's walk along an unpaved portion of Misiti's premises and her subsequent fall through a fence originated, stemmed or resulted from her legal or proper enjoyment of the tavern. Although the facts demonstrate that these occurrences followed sequentially, there is no allegation that they were connected causally, one resulting from the other. Accordingly, the allegations of the complaint, either alone or in combination with the stipulated facts, do not set forth a cause of action within the scope of coverage afforded by the policy.

The judgment is reversed and the case is remanded with direction to deny the plaintiffs' motion for summary judgment and to grant Travelers' motion for summary judgment and to render judgment thereon for Travelers.

In this opinion the other judges concurred.