**PACIFIC EMPLOYERS INSURANCE CO., Plaintiff,**

v.

**TRAVELERS CASUALTY & SURETY CO., Standard Fire Insurance Co., Evanston Insurance Co., and St. Francis Care, Inc., Defendants.**

**No. 3:11cv924 (MRK).**

United States District Court, D. Connecticut.

April 19, 2012.

See also 2012 WL 3202934.

Austin J. McGuigan, Joseph Bree Burns, Zisca R. St. Clair, Rome McGuigan, P.C., Hartford, CT, Gary Svirsky, John Barden McDonald, Stephen Kress, Tancred Schiavoni, O'Melveny & Myers LLP, New York, NY, for Plaintiff.

Karen L. Dowd, Wesley W. Horton. Horton, Shields & Knox, Gregory W. Nye, Michael J. Coolican, Bracewell & Giuliani, LLP, Hartford, CT, Kevin J. O'Connor, Kevin P. Polansky, Peter C. Netburn, Hermes, Netburn, O'Connor & Spearing, P.C., Boston, MA, Andrew A. Cohen, Phyllis M. Pari, Letizia, Ambrose & Falls, New Haven, CT, Evan Shapiro, Boundas, Skarzynski, Walsh & Black, LLC, New York, NY, Charles Fischette, Seth A. Tucker Covington & Burling, LLP, Washington, DC, for Defendants.

### *MEMORANDUM OF DECISION*

MARK R. KRAVITZ, District Judge.

This case arises out of the scores of claims brought against St. Francis Hospital by victims of the late George Reardon, a former endocrinologist at the Hospital who from 1963 to 1993 is said to have sexually abused many of the children who were his patients. These claims—most of which have settled, though two have gone to trial, one is on appeal, and approximately forty are still being litigated—have all been brought in Connecticut state court. The case before this Court is far more limited. The parties here are the Hospital and three of its insurers (or their successors in interest) from the period January 1, 1981 to October 1, 1985. They seek a declaratory judgment as to which type of insurance coverage applies to the claims in the underlying litigation: professional liability coverage or general liability coverage. This judgment will determine which of the parties have a duty to defend, and which have a duty to indemnify, St. Fran-

cis Hospital for claims arising from the period at issue.

The Court does not yet have enough information to determine whether the varied claims raised by the plaintiffs in the underlying litigation fall exclusively within the insurers' professional liability coverage, as Defendants Travelers [1] and Evanston would have the Court find. Thus, the Court cannot enter summary judgment on their behalf. The Court is, however, able to grant Pacific Employers' ("PEIC's") more limited motion for summary judgment, as it is clear on the record before the Court that "an allegation of the [underlying] complaint falls even possibly within" St. Francis's general liability coverage, *R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 273 Conn. 448, 470, 870 A.2d 1048 (2005), and thus that Travelers has a duty to defend St. Francis under that coverage until its general liability coverage limit is reached and PEIC's excess coverage takes over.

## I.

### A.

St. Francis Hospital and Medical Center (the name under which Defendant St. Francis Care, Inc. does business) maintained its primary insurance with Travelers from at least 1963 until October 1, 1984. Evanston provided St. Francis with its primary insurance for the period from October 1, 1984 to October 1, 1985. PEIC issued five insurance policies to St. Francis that, together, provided excess coverage from January 1, 1981 to October 1, 1985. PEIC's policies "follow form" to the Travelers' and Evanston policies, providing excess coverage to the Hospital on the same terms as the primary-level policies.

PEIC's coverage kicks in when the primary-level policies' coverage limits are reached. PEIC's policy includes a duty to defend St. Francis against personal injury suits only once the "limits of liability of the underlying insurance are exhausted." Mot. for Partial Summ. J. [doc. # 105–13] Ex. J (PEIC Policy).

Since the questions raised by Defendants' summary judgment motions turn on the specific language of the Travelers and Evanston policies, the Court will quote them at some length. The four policies issued by Travelers and the one policy issued by Evanston during the period in question all contain two types of coverage: Hospital Professional Liability ("HPL") and General Liability ("GL"), each with its own claim and aggregate coverage limits. Three of the four Travelers policies—those from 1980, 1982, and 1983—use the same language to describe the coverage. Travelers' 1981 policy is worded somewhat differently, but none of the parties have contended that the differences are relevant here.

Travelers' 1980, 1982, and 1983 HPL forms state:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to any person arising out of the rendering of or failure to render, during the policy period, the following professional services:
>
> (a) medical, surgical, dental or nursing treatment [2] to such person or the person inflicting the injury including the furnishing of food or beverages in connection therewith,

---

**1.** Following the parties' practice, the Court refers to Standard Fire Insurance Co. and Travelers Casualty and Surety Co., the successor-in-interest to Aetna Casualty and Surety Co. (which issued St. Francis its policies), collectively as "Travelers."

**2.** Instead of "medical treatment," the 1981 HPL policy covers "medical incident[s]," defined in relevant part as "any act or omission in the furnishing of professional heath care services." Aff. of Maria T. Erkfitz [doc. # 130] Ex. B.

(b) furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances . . . ,

(c) handling of or performing postmortem examinations on human bodies, or

(d) service by any person as a member of a formal accreditation or similar professional board or committee of the named insured, or as a person charged with the duty of executing directives of any such board or committee.[3]

Aff. of Maria T. Erkfitz [doc. # 130] Exs. A, C, and D.

Two other provisions in Travelers' HPL coverage from those years are relevant to this suit as well. First, the HPL form provides that

the company shall have the right and duty to defend any suit against the insured seeking such damages, even if any of the allegations of the suit are groundless, false or fraudulent . . . , but the company shall not be obligated to . . . defend any suit after the applicable limit of the company's liability has been exhausted.

*Id.* A second crucial paragraph—which Travelers refers to as the "non-concurrency provision"—governs the interaction between each policy's two forms of coverage. This provision is found in paragraph V.C of the HPL form:

**Limitation of Coverage Under Any Other Liability.** Except as stated in this Part, the policy does not apply to injury arising out of the rendering of or failure to render the professional services described in paragraph 1 above.

*Id.*[4] According to Travelers, the non-concurrency provision prevents any overlap between its HPL and GL coverage; the two coverage parts, it says, are mutually exclusive. Thus, if an injury alleged in the underlying litigation were to fall within Travelers' HPL coverage, Travelers' GL coverage would not apply. Further, once Travelers reached the limit of its HPL coverage, it would no longer have a duty to defend against such a claim.

Travelers' GL coverage provides indemnity to St. Francis for

damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and [Travelers] shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, . . . but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted. . . .

*Id.* The Travelers policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.*

Evanston's policy distinguishes its two forms of coverage in these terms:

(a) Coverage A—Professional Liability—To indemnify the Insured for the excess net loss in excess of the retained limit which the Insured shall become legally obligated to pay as damages as a result of malpractice arising out of the rendering of or the

---

**3.** The 1981 HPL policy refers instead to "service by any person as a member of a formal accreditation, standards review or similar professional board or committee of the named insured." *Id.*

**4.** Here again, the 1981 HPL policy language is somewhat different: "**Limitation of Coverage Under Any Other Liability Insurance** Except as stated in this Part, this policy does not apply to injury caused by any medical incident." *Id.*

failure to render during the policy period the following professional services in the Named Insured's hospital, nursing home, outpatient department or in any ambulance owned, operated or maintained by the Named Insured:

(i) medical, surgical, dental or nursing treatment to a patient, including the furnishing of food or beverages, in connection therewith;

(ii) the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances . . . ;

(iii) the handling or performing of post-mortem examinations on human bodies; or

(iv) services by any person as a member of a formal accreditation or similar professional board or committee of the Insured, or as a person charged with the duty of executing directives of any such board or committee.

(b) Coverage B—General Liability: To indemnify the Insured for the excess net loss in excess of the retained limit which the Named Insured shall become legally obligated to pay as damages because of personal injury or property damage caused by an occurrence during the policy period and arising out of the Named Insured's business as a hospital or nursing home.

Aff. of Sonia V. Odarczenko [doc. # 144] Ex. A.

The Evanston Policy also states exclusions: Coverage A does not apply "to liability because of personal injury or property damage caused by an occurrence arising out of the Named Insured's business as a hospital or nursing home," *id.;* in other words, Coverage A does not apply when Coverage B applies. Similarly, Coverage B does not apply "to personal injury or property damage arising out of the rendering or failure to render any professional services," *id.,* thus carving out any liability covered under Coverage A. Unlike Travelers' policy, Evanston's policy does not include a duty to defend in addition to its duty to indemnify. Thus, the third count of PEIC's complaint in this case—the subject of its motion for partial summary judgment—only concerns Travelers' duty, not Evanston's, to defend St. Francis.

### B.

Though this case is decidedly not about the merits of plaintiffs' claims in the underlying litigation against St. Francis, a few facts about that litigation are necessary in order to resolve the present dispute.

Dr. Reardon, whose professional specialty was childhood growth and maturation, is alleged to have sexually abused children while seeing them as patients or as subjects of a growth study he purported to conduct. Since the discovery, after Dr. Reardon's death, of a large stash of pornographic images of children hidden behind a false wall of his home, approximately 160 of Dr. Reardon's alleged victims have brought claims in Connecticut state court against St. Francis. The state court has consolidated these complaints into a Uniform Complaint, which includes claims of corporate negligence, breach of fiduciary or confidential relationship, breach of the special duty of care owed to children, vicarious liability under the "aided-in-the-agency-relation" doctrine, and breach of fiduciary duty by intentional concealment. *See* Decl. of Kevin P. Polansky [doc. # 122–4] Ex. 5 ("Uniform Complaint").

One of the underlying actions, brought by Tim Doe # 1, went to trial in 2011 and resulted in a jury verdict for the plaintiff. Before that happened, however, St. Francis moved for summary judgment and the state court reduced the five claims of the Uniform Complaint, at least as to Tim Doe

# 1, down to two: the first, alleging negligence, and the third, alleging a breach of the special duty of care owed to children. *See id.* Ex. 10 ("Mem. of Dec.").

Claim One of the Uniform Complaint alleges thirty-four different ways in which St. Francis breached its duties to the plaintiffs. These include a broad range of alleged failures on the part of the Hospital or its employees, including the Hospital's failure to properly supervise or monitor Dr. Reardon and his purported growth study; to set protocols for, or to request reports or results of, Reardon's study; to educate its administrators, medical staff, security officers, and other employees about appropriate behavior with children; and to take steps to ensure that a third party was present during Reardon's examinations of minors after a complaint of inappropriate sexual contact was made. Claim One also includes allegations that the Hospital's administrators, medical staff, security officers, and other employees failed to report their suspicions of Dr. Reardon's behavior as mandated under state law and that they knew or should have known that Dr. Reardon was driving minors to the hospital; meeting with them in the Hospital lobby, gift shop, and cafeteria; seeing them in his private offices for hours at a time, including at night and on weekends; and taking photographs of children without using the Hospital photography lab to develop the film. Claim Three repeats many of these same allegations against the Hospital, its administrators, medical staff, security officers, and other employees, all of whom are said to have breached of the special duty of care to children.

In one of its most recent filings, Travelers informed the Court that fifty-nine cases were pending against St. Francis in November 2011, when PEIC filed its motion for partial summary judgment. Between then and February 2012, nineteen additional claims were settled by the Hospital, nine of which fell within the PEIC coverage period. Of the forty suits remaining as of February 3, 2012, seventeen fall within the period at issue in the present case. *See* Supp. Aff. of Maria T. Erkfitz [doc. # 193–3].

## II.

In June 2011, PEIC filed the present suit against Travelers, Evanston, and St. Francis seeking declaratory judgments that (1) the underlying Reardon litigation does not implicate HPL coverage because it results from sexual misconduct, not medical treatment; (2) the underlying litigations implicates GL coverage; and (3) Travelers and Evanston have a duty to defend St. Francis because the underlying allegations fall potentially within the GL coverage of their respective policies. *See* Compl. [doc. # 1]; Am. Compl. [doc. # 8].

PEIC filed its Motion for Partial Summary Judgment [docs. # 100, 105][5] in November 2011, asking for judgment against Travelers only as to Count III, PEIC's duty-to-defend claim. St. Francis joined PEIC's motion except to the extent that PEIC argued that claims against the hospital could not possibly fall within HPL coverage. *See* Mot. for Limited Joinder [doc. # 119] at 7. Over PEIC's objection, *see* Mot. for Extension of Time [doc. # 115], Travelers responded with a Cross–Motion for Summary Judgment [docs. # 122, 129], arguing that the underlying claims arise out of either the actions of persons serving on one of the Hospital's professional medical staff boards or committees or out of the Hospital's failure to supervise its professional staff—an activity which Travelers claims is itself "part of the

---

**5.** Many of the documents in this case have been filed in both redacted and sealed, unredacted versions, and thus are listed under two docket numbers.

medical treatnemtnt and processional medical services performed by the Hospital." Travelers Cross–Mot. [doc. # 129] at 3. Either way, argues Travelers, the underlying claims implicate HPL coverage and thus, according to the policies' non-concurrency provisions, cannot implicate GL coverage. This distinction matters on a practical level insofar as Travelers is said to have already reached its HPL coverage limit, but not that of its GL coverage. (This fact, whether true or not, makes no difference to the Court's task of interpreting the parties' insurance contract.)

Adopting nearly all of Travelers arguments as its own, Evanston also filed a Motion for Summary Judgment [docs. # 131, 143] against PEIC, claiming along with Travelers that only HPL coverage is implicated by the underlying litigation. Evanston also notes that, unlike Travelers' policies, Evanston's policy includes only a duty to indemnify, not to defend.

### III.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record, *see* Fed.R.Civ.P. 56(c), and it must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir.2008).

At the summary judgment stage of a proceeding, the moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A dispute regarding a material fact is

genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir.2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir.2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir.2011). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown*, 654 F.3d at 358 (quotation marks omitted).

▮▮▮ Before turning to its analysis, the Court notes that since this is a diversity action, Connecticut law governs the Court's interpretation of the insurance contracts at issue. Under Connecticut law, "[a] contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy giving the words of the policy their natural and ordinary meaning and construing any ambiguity in the terms in favor of the insured." *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire*

*Ins. Co.*, 274 Conn. 457, 463, 876 A.2d 1139 (2005) (quotations marks and alterations omitted). The Court's construction of a contract of insurance presents a question of law. *Id.* at 462, 876 A.2d 1139.

## IV.

The dueling motions for summary judgment in this case concern two duties: the insurers' duty to defend and their duty to indemnify St. Francis from the underlying suits. The Court is asked to interpret Travelers' and Evanston's insurance policies in order to determine which type of coverage—HPL or GL—gives rise to each of these duties.

█ Connecticut's courts have made abundantly clear that "the duty to defend is considerably broader than the duty to indemnify." *DaCruz v. State Farm Fire and Cas. Co.*, 268 Conn. 675, 687, 846 A.2d 849 (2004). According to the Connecticut Supreme Court:

> The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. Moreover, if an allegation of the complaint falls *even possibly* within the coverage, then the insurance company must defend the insured. In contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case.

Thus, the duty to defend is triggered whenever a complaint alleges facts that *potentially* could fall within the scope of coverage, whereas the duty to indemnify arises only if the evidence adduced at trial establishes that the conduct *actually* was covered by the policy. Because the duty to defend is significantly broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify.

*Id.* at 687–88, 846 A.2d 849 (quotation marks, citations, and alterations omitted).

In the two following sections, the Court clarifies the questions that must be asked in order to determine, first, Travelers' duty to defend and, second, the parties' respective duties to indemnify. The Court then answers those questions to the extent possible on the basis of the record currently before it.

### A.

Travelers argues that because the Uniform Complaint "even possibly" implicates the Hospital's HPL coverage, and because HPL coverage trumps GL coverage according to the policy's non-concurrency provision, Travelers' duty to defend St. Francis necessarily arises solely under its HPL coverage. In other words, the fact that the Uniform Complaint might "even possibly" implicate GL coverage is irrelevant. Travelers' policy requires that we look first to the HPL coverage, and once that is triggered, we need (indeed may) look no further.

PEIC, on the other hand, would have the Court look only to Travelers' GL coverage. If the Court finds that any of the claims made in the underlying litigation fall "even possibly" within the bounds of the GL coverage, PEIC insists that Travelers' duty-to-defend has been triggered and PEIC's partial summary judgment motion should be granted.

The Court cannot not fully agree with either argument. To start, the Court accepts Travelers' interpretation of its policy's non-concurrency provision. The policy, which must be read as a whole, is unambiguous in describing the interaction of its two forms of coverage: HPL precludes GL. If an injury arises out of the rendering of the professional services listed on the HPL form, that injury falls solely within Travelers' HPL coverage and does not give rise to GL coverage.

Because the provisions interact in this way, PEIC must show not just that certain claims in the underlying litigation possibly fall within the language of the GL coverage form. It is possible, after all, that a claim possibly falling within the GL coverage also falls within the terms of the HPL coverage; due to the non-concurrency provision, a claim like this would ultimately be covered under HPL, not GL. Instead, PEIC must show that one or more of the underlying claims possibly implicates *only* GL coverage.

This, of course, is different than asking PEIC to show that *all* of the underlying claims fall outside HPL coverage in order to establish a duty to defend under GL— as Travelers would require. Travelers' argument runs up against the well-established principle that the duty to indemnify implies a duty to defend.[6] According to Travelers' argument, a plaintiff who brought one claim that falls within HPL and another claim that falls only within GL would create a duty to defend solely under HPL. But if that plaintiff prevailed only on his second claim, the defendant's insurer would then have a duty to indemnify under GL without ever having had a duty to defend under GL. This cannot be the case if, as Connecticut courts have so often said,

the duty to defend is broader than the duty to indemnify. *See id.*

The question the Court must ask, then, in determining Travelers' duty to defend is this: Can PEIC show that certain of the underlying claims even possibly implicate Travelers' GL coverage alone? If PEIC can show this, its motion for partial summary judgment must be granted.

### B.

While ordinarily the duty to indemnify cannot be established until the end of trial, courts may determine the scope of that duty as a matter of law in advance of trial if a specific theory of liability has been asserted by the plaintiff in the underlying litigation. The Connecticut Supreme Court did exactly this in *Board of Education of the City of Bridgeport v. St. Paul Fire and Marine Insurance Co.*, where, in answer to a question certified to it from federal court, the Supreme Court decided that injuries sustained when a bus driver allowed unsupervised students to depart from his bus were injuries that resulted from use of the bus and thus fell within the terms of the defendant's insurance policy. *See* 261 Conn. 37, 48, 801 A.2d 752 (2002). Because the Supreme Court was able to determine that the injury alleged did fall within the scope of the coverage—not just that it potentially could fall within the coverage, which is all that is needed to trigger the duty to defend—the Court was able to determine in advance of trial that the underlying claim, "*if proven*, would fall within the parameters of coverage under the policy"; the defendant would then "have a duty to indemnify the plaintiff pursuant to the policy." *Id.* at 49, 801 A.2d 752 (emphasis added).

---

**6.** Of course, this principle only applies when an insurance policy includes both types of duties. Since Evanston's policy does not include a duty to defend, such a duty is not implied by Evanston's duty to indemnify.

■ *Bridgeport Board of Education* teaches that a duty to indemnify can be established in advance of trial only if the claims made in the complaint would, if proven, necessarily fall within a particular type of coverage. This means that Travelers and Evanston can succeed on their motions for summary judgment only if the claims made in the underlying litigation all implicate St. Francis's HPL coverage. Obviously, were Travelers and Evanston to succeed in showing this, Travelers would have also defeated PEIC's motion for partial summary judgment. After all, if the Court finds that the underlying claims *actually* all fall within the HPL coverage, then they can no longer be said to fall even possibly under GL coverage as well. In that case, Travelers' duty to defend under its GL coverage would not arise.

The question asked by Travelers' and Evanston's motions for summary judgment thus amount to the same question asked by PEIC's motion for partial summary judgment: Do all of the claims in the underlying litigation implicate HPL coverage, or are there any that might even possibly implicate GL, but not HPL, coverage?

### C.

Attempting to show that the underlying claims all implicate HPL coverage, Travelers and Evanston argue that every plaintiff in the underlying litigation shares a common theory of liability against St. Francis: all allege corporate negligence through the Hospital's failure to supervise Dr. Reardon. *See, e.g.,* Travelers' Cross–Mot. for Summ. J. [doc. # 129] at 10, 19. According to Travelers and Evanston, this common theory of liability implicates their HPL coverage in two ways: first, a hospital's supervision of its medical staff itself constitutes a professional medical service; and second, service on a "formal accreditation or similar professional board or com-

mittee" is one of the enumerated categories on the HPL coverage form.

Travelers and Evanston also rely on *St. Paul Fire and Marine Insurance Co. v. Shernow,* 222 Conn. 823, 610 A.2d 1281 (1992), for the proposition that injuries arising out of a doctor's molestation of a patient can potentially fall within HPL coverage. *Shernow* involved a dentist who sexually abused a patient while giving her nitrous oxide during what was meant to be a molar filling. The Connecticut Supreme Court held in that case that "[w]hen [a] medically negligent procedure is so inextricably intertwined and inseparable from the intentional conduct that serves as the basis for the separate claim of a sexual assault, we … conclude that professional liability policies must, in such instances, extend coverage." *Id.* at 830, 610 A.2d 1281.

PEIC, joined by St. Francis, responds with four main arguments: (1) a doctor who sexually assaults patients in the manner of Dr. Reardon is not providing medical treatment to them; (2) supervision by Hospital employees to prevent molestation is not a professional health care service; (3) a question of fact remains as to whether the St. Francis's Research Committee should count as one of the "formal accreditation or similar professional board[s] or committee[s]" mentioned in the HPL form; and (4) the many theories of causation in the Uniform Complaint do not all involve professional medical services.

The Court finds the last of these arguments especially persuasive. The facts alleged in the Uniform Complaint are not limited the Hospital's supervision of treatment and research. Many of the allegations involve not just Hospital administrators and medical staff, but also security officers and other employees. Claim One of the Uniform Complaint alleges that these officials knew or should have known that Dr. Reardon was meeting with minors

after hours in the gift shop, lobby, and cafeteria; that he was driving minors to and from the Hospital; and that he was taking children who were not his patients out of the pediatric ward in the evenings. The Uniform Complaint also alleges that Hospital employees—again including non-medical staff such as security guards—failed to report their reasonable suspicions of abuse, as mandated by Connecticut law; failed to warn parents of the danger Dr. Reardon posed; failed to investigate claims made against Dr. Reardon; and failed to institute general policies regarding appropriate behavior with children. Given that none of these alleged facts seem to arise out of medical treatment or other professional hospital services, it is certainly possible that any one of them might implicate Travelers' GL coverage and thereby give rise to a duty to defend St. Francis under the terms of that coverage.

Seeking to avoid this result, Travelers argues that the allegations above are subsidiary to what it describes as the "substantive thrust of the [Uniform] complaint." Travelers' Reply [doc. # 196] at 3 (quoting *Gartner, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 3:08cv405 (JBA), 2010 WL 918075, at *2 (D.Conn. Mar. 11, 2010)); *see also R.C. Bigelow v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 245 (2d Cir. 2002). The Court, however, does not read the opinions cited by Travelers as requiring it to find—especially in advance of trial—that a complaint alleging thirty-four different theories of liability must somehow be reduced to a single "substantive thrust." In fact, Judge Arterton, in *Gartner*, writes not only of "the substantive thrust of the complaint," but also of a single paragraph within the complaint that makes "a substantive thrust in the direction of" a business disparagement claim. *Gartner*, 2010 WL 918075, at *2, *6 (emphasis altered). Her point is that courts should look to the true meaning of

each of the various allegations made in a complaint, not contort them to fit certain policy provisions. The point is not that all the various allegations made in a complaint must somehow coalesce into one "thrust."

Travelers also cites a Connecticut Appellate Court case, *Clinch v. Generali–U.S. Branch*, 110 Conn.App. 29, 954 A.2d 223 (Conn.App.Ct.2008), in which that court did not allow the plaintiff to isolate certain elements of his complaint in order to avoid an insurance policy's exclusion of injuries arising from assault and battery. There too the plaintiff was attempting to sidestep the "thrust"—which is to say, twist the meaning—of one of his own claims by treating what was clearly an injury arising from assault and battery as one arising from defective premises.

Here, by contrast, PEIC and St. Francis are not trying to twist an allegation into something other than it truly is. Instead, they are pointing to the fact that the Uniform Complaint contains multiple allegations of significantly different kinds. On several of the theories of liability that the underlying plaintiffs might assert and a jury may or may not credit, the plaintiffs would be alleging injuries that arise out of professional services. But on other possible theories of liability—those mentioned above—plaintiffs would be alleging facts that do not, or at least possibly might not, fall within Travelers' HPL coverage provisions. Because these allegations could potentially fall within Travelers' GL coverage, Travelers has a duty under its GL coverage to defend St. Francis against them. PEIC's motion for partial summary judgment is therefore granted.

■ Because the Court does not yet know what facts the remaining plaintiffs will seek to prove at trial, which theories of liability they will pursue, and which the eventual juries might find convincing, the Court cannot say at this point that the underlying plaintiffs' claims will necessari-

ly fall within Travelers' and Evanston's HPL coverage terms, especially given how little the record reveals about the underlying litigation. Out of the dozens of cases brought, only one—which does not fall within the time period that is relevant here—has gone to a jury verdict. There are simply too many questions remaining about the nature of the underlying claims to say as a matter of law that none will implicate GL coverage rather than HPL. Travelers' cross-motion and Evanston's motion for summary judgment must therefore be denied.

### D.

Because the Court has decided these motions on the grounds that it has, the Court does not yet need to address the two difficult questions of Connecticut law which the parties have raised in their briefs: (1) whether the Hospital's supervision of its doctors itself constitutes a professional health care service; and (2) whether the injuries caused by Dr. Reardon's sexual abuse are ones that can be said to arise from medical treatment.

These two questions are closely akin to those which the Second Circuit certified to the Connecticut Supreme Court in *Northfield Insurance Co. v. Derma Clinic, Inc.*, 440 F.3d 86, 95–96 (2d Cir.2006). Unfortunately, the *Derma Clinic* case was resolved before the Connecticut Supreme Court had the opportunity to respond.

Once the record in the present case is more fully developed, the question of whether the underlying plaintiffs' claims fall within the terms of the HPL coverage may turn out to hinge upon one or both of the two questions above. If so, this Court will likely want to certify those questions once again to the Connecticut Supreme Court. This Court's general practice, however, is to certify questions to the Connecticut Supreme Court only when the parties are able to agree on certification

and stipulate to the facts and questions of law. *See Ballou v. Law Offices of Howard Lee Schiff, P.C.*, 713 F.Supp.2d 79, 80 (D.Conn.2010) (discussing the Court's general practice and reasons for making exceptions to that practice); *Doninger v. Niehoff*, 594 F.Supp.2d 211, 229 n. 5 (D.Conn.2009). The Court will thus await a fuller development of the factual record regarding the nature of the underlying claims and the basis for settlement or judgment in the underlying litigation before determining whether the questions above must be decided.

### V.

For the foregoing reasons, Plaintiff PEIC's Motion for Partial Summary Judgment [docs. #100, 105] is GRANTED. Defendant Travelers' Cross–Motion for Summary Judgment [docs. #122, 129] and Defendant Evanston's Motion for Summary Judgment [docs. #131, 143] are DENIED. The Parties shall confer and jointly submit a proposed scheduling order to the Court no later than May 3, 2012.

IT IS SO ORDERED.