**10-4528-cv(L)**
**Ryan v. National Union Fire Insurance Co. of Pittsburgh PA**

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2011

(Argued: May 10, 2012      Decided: August 27, 2012 )

Docket Nos. 10-4528-cv(L), 10-4700-cv(XAP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

BRUCE CHARLES RYAN,

Plaintiff-Counter-Defendant-Appellee-
Cross-Appellant,

RUSSELL WILLIAM NEWTON, ROBERT
FITZPATRICK, MERIT CAPITAL ASSOCIATES, INC.,

Plaintiffs-Appellees-Cross-Appellants,

DAVID W. GWYNN, RAQUEL GWYNN, GWYNN
FINANCIAL SVC. INC.,

Consolidated Plaintiffs-Counter Defendants,

v.

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH PA,

Defendant-Counter-Claimant-Appellant-
Cross-Appellee,

AIG TECH. SVC. INC., CHARTIS CLAIMS, INC.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: WESLEY and LOHIER, <u>Circuit Judges</u>, and MURTHA, <u>District Judge</u>.[*]

Appeal from a judgment of the United States District Court for the District of Connecticut (Droney, <u>J.</u>) awarding the plaintiffs consequential damages for the defendant's breach of its duty as an insurer to defend them in a securities arbitration. On appeal, the defendant National Union Fire Insurance Company of Pittsburgh PA challenges the District Court's ruling that it had a duty to defend the plaintiffs under the applicable insurance policy, and that consequential damages, including reputational damages, are available solely for an insurer's breach of its duty to defend under Connecticut law. We conclude that the District Court properly determined that National Union breached its duty to defend. However, because we conclude that the latter question regarding the availability of consequential damages has not been decided under Connecticut law and is appropriate for certification, we certify this question to the Supreme Court of Connecticut and stay resolution of this appeal and cross-appeal.

PETER M. NOLIN, Sandak Hennessey & Greco, LLP (Stephanie A. McLaughlin, <u>on the brief</u>), Stamford, Conn., <u>for</u> Plaintiffs-Appellees-Cross-Appellants.

DENNIS O. BROWN, Gordon & Rees LLP (Joseph R. Geoghegan, <u>on the brief</u>), Hartford, Conn., <u>for</u> Defendant-Counter-Claimant-Appellant-Cross-Appellee.

LOHIER, <u>Circuit Judge</u>:

This appeal requires us to consider whether consequential damages, which are traditionally available for breach of contract claims, are also available for a claim of breach of a duty to defend an insured under Connecticut law, and if so, whether they may include damages for harm to reputation. The defendant National Union Fire Insurance Company of Pittsburgh PA ("National Union") appeals from a judgment of the United States District Court for the District of Connecticut (Droney, <u>J.</u>) awarding the plaintiffs consequential damages, following a jury trial, for National Union's breach of its duty to defend the plaintiffs in a securities arbitration. The

_____

[*] The Honorable J. Garvan Murtha of the United States District Court for the District of Vermont, sitting by designation.

District Court found that National Union had breached its duty to defend and concluded that, in addition to being liable for the defense costs and underlying settlement, which it had already paid, National Union could also be liable for consequential damages for the breach of the duty to defend, including damages for injury to professional reputation and loss of future earning potential. On appeal, National Union challenges the District Court's determination that it breached its duty to defend, and also argues that consequential damages are not available in the context of an insurer's breach of a duty to defend.

The Connecticut courts have said very little either way about whether consequential damages are available solely for such a breach. Nor have they determined whether reputational damages, specifically, are compensable in an action predicated on an insurer's breach of its duty to defend. Although no case in Connecticut has awarded consequential damages solely for a breach of a duty to defend, we hesitate to prohibit recovery of such damages, which are generally permitted under contract law, when Connecticut has not clearly addressed the issue. Similarly, absent a precedential decision from the Connecticut courts, we are reluctant to foreclose claims for reputational damages in actions similar to this one. Accordingly, we certify the following two questions to the Supreme Court of Connecticut and stay resolution of this appeal and cross-appeal in the interim:[1]

(1) Does Connecticut law permit a policyholder to recover consequential damages in a breach of contract action against an insurer predicated on the insurer's breach of its duty to defend?

---

[1] National Union and the plaintiffs raise other issues in their appeal and cross-appeal, respectively, that are not relevant to the question certified in this opinion, but that this panel will consider once the Supreme Court of Connecticut has either provided us with guidance or declined certification.

(2) If consequential damages are available, may such damages include damages for harm to reputation and loss of income?

**BACKGROUND**

Plaintiffs Bruce Ryan, Russell Newton, and Robert Fitzpatrick were executives of Merit Capital Associates, Inc. ("Merit"), a securities broker-dealer. All three were insured by National Union under a Securities Broker/Dealer Professional Liability Insurance Policy (the "Policy"), which covered losses up to $1 million for each loss and $2 million in the aggregate for the period from August 23, 1999 to September 23, 2001. In August 2001 Michael Sowell, Merit's former client, filed a securities arbitration claim before the National Association of Securities Dealers ("NASD") against the plaintiffs and David Gwynn, a registered representative working for Merit. In his Amended Statement of Claim (the "Sowell Claim"), Sowell claimed approximately $1 million in damages arising from Gwynn's mismanagement of his Merit account, which was opened in May 1998. Sowell alleged that Gwynn had "churned" his account by trading excessively for the sole purpose of generating commissions, fraudulently and negligently managed the account, and unlawfully solicited investments for some sham charter school businesses owned by Gwynn. He also alleged that the other Merit executives had negligently supervised Gwynn.

Plaintiffs submitted the Sowell Claim to National Union, seeking a defense and coverage under the Policy, which included three exclusions relevant to this appeal. First, exclusion (f) exempted coverage for losses arising out of wrongful acts or interrelated wrongful acts occurring prior to August 23, 1999. Second, exclusion (s) precluded coverage of discretionary accounts. Third, exclusion (t) barred coverage of claims involving entities outside of Merit.

4

Several months after initiating an investigation to confirm Sowell's allegation that he had given Gwynn discretionary control over his account, and after also arranging for separate counsel to represent Gwynn, National Union withdrew its defense. Although it subsequently received documents showing that Sowell's account was in fact not discretionary, National Union continued to deny the plaintiffs a defense. Meanwhile, the plaintiffs obtained replacement counsel, and Gwynn proceeded pro se in the NASD arbitration, although he borrowed funds to retain counsel to pursue coverage under the Policy. A few days before the arbitration, Gwynn, through counsel, again sought coverage from National Union, warning the insurer that he might allow the arbitration panel to enter a default judgment against him and assign his claims against National Union to Sowell.

By the time National Union provided Gwynn with defense counsel, it was too late. Although he had not agreed to a default judgment, Gwynn had already appeared pro se at the arbitration and compromised the plaintiffs' defense. The arbitration panel found Gwynn and the plaintiffs jointly and severally liable and awarded Sowell $1.125 million in damages. Gwynn and the plaintiffs requested that National Union settle with Sowell before the arbitration award was confirmed. When National Union failed to respond, the plaintiffs commenced this action alleging that National Union had breached its duties to defend and indemnify, acted in bad faith, and violated various provisions of Connecticut law not relevant to the question certified in this opinion. The plaintiffs sought to recover their "costs connected with the Sowell arbitration, damages related to regulatory proceedings initiated as a result of the Sowell arbitration award, and damage to the plaintiffs' reputations, earning potential, ability to conduct business and obtain certain licenses." S.P.A. 5. Soon after the plaintiffs filed this lawsuit, National Union negotiated a $1 million settlement with Sowell, as part of which Sowell agreed to vacate the

5

arbitration award and enter into a covenant not to sue National Union, the plaintiffs, or Gwynn. National Union then filed counterclaims against the plaintiffs seeking to recover these costs and alleging unjust enrichment, among other claims.

Arguing that it had no duty to defend because Sowell's allegations clearly fell within exclusions (s), (f), and (t) of the Policy, National Union moved for summary judgment to dismiss the plaintiffs' claims. The District Court denied the motion because it concluded that those exclusions did not preclude coverage under the Policy for all of the claims in the underlying Sowell Claim.[2]

The plaintiffs' claims then proceeded to a jury trial. During the trial, the court determined that National Union had breached its duty to defend the Sowell Claim and granted the plaintiffs' motion for judgment as a matter of law on National Union's counterclaim of unjust enrichment. The court further concluded that by breaching its duty to defend, National Union was liable to indemnify the plaintiffs.

The District Court found that National Union had already paid the plaintiffs' attorneys' fees incurred in defending the Sowell arbitration and also paid to settle the arbitration. Accordingly, the only remaining issues for the jury to determine were: (1) whether the plaintiffs had proven that they had suffered "reasonably foreseeable" consequential damages from National Union's breach of its duty to defend, and (2) whether National Union had acted in bad faith and, therefore, whether the plaintiffs were entitled to compensatory and punitive damages. The plaintiffs contended that they had suffered consequential damages "in the form of injury to

---

[2] Although it may have been able to do so, National Union did not argue before the District Court that the claims in the underlying Sowell Claim were segregable for the purposes of its duty to defend.

6

their professional reputations and future earning potential, as well as continued costs in addressing regulatory proceedings." J.A. 584. They relied on evidence from an expert who testified that broker/dealers who have paid significant sanctions have trouble finding work, and on testimony from plaintiff Newton, who described his professional difficulties following the Sowell award.

In response, National Union argued that consequential damages were not available under Connecticut law. The District Court rejected National Union's argument and charged the jury that it could award consequential damages to the plaintiffs above the limits set forth in the Policy. The jury found that National Union had not acted in bad faith and thus awarded only consequential damages in the amounts of $350,000 for Ryan, $325,000 for Newton, $200,000 for Fitzpatrick, and $0 for Merit. In a post-trial motion, National Union insisted that consequential damages should be denied as a matter of law, as the plaintiffs had failed to prove that the damages were foreseeable and had failed to provide a sufficient evidentiary basis for the jury's damages calculation. The District Court denied the motion and entered judgment in favor of the plaintiffs.

This appeal followed.

**DISCUSSION**

On appeal, National Union argues principally that it had no duty to defend the Sowell Claim, and that, even if it had breached its duty, consequential damages are not available under Connecticut law for such a breach. With respect to both issues, "[w]e review de novo the district court's interpretation of [state] law." Amerex Grp., Inc. v. Lexington Ins. Co., 678 F.3d 193, 199 (2d Cir. 2012). We conclude that National Union had a duty to defend the Sowell Claim and

7

that it breached that duty when it declined to defend the action as a whole.[3]  See Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co., 826 A.2d 107, 120 (Conn. 2003) ("An insurer must bear the entire cost of defense when there is no reasonable means of prorating the costs of defense between the covered and the not-covered items. . . ." (alteration and quotation mark omitted)); Lancia v. State Nat'l Ins. Co., 41 A.3d 308, 314 (Conn. App. Ct. 2012).  As we explain below, however, we certify the question of whether consequential damages are available under Connecticut law for an insurer's breach of its duty to defend and, if so, whether the insured may recover reputational damages.

### 1.  Duty To Defend

National Union relies on exclusion (f) of the Policy to contend that it had no duty to defend the Sowell Claim.[4]  This exclusion states:

> The Insurer shall not be liable for Loss in connection with any Claim made against an Insured:

---

[3] On appeal, the plaintiffs do not contest the District Court's finding that exclusion (t) of the Policy applied to Sowell's claims relating to Gwynn's charter school businesses.  For its part, National Union has abandoned the argument that exclusion (s) (which relates to discretionary control) absolves it of the duty to defend Sowell's thirteen claims of churning, fraud, negligence, and violation of various NASD rules.

[4] National Union could not have appealed the denial of its motion for summary judgment, because such a denial is not a final judgment and is not ordinarily appealable.  See 28 U.S.C. § 1291.  Thus, insofar as National Union appeals the District Court's denial of National Union's summary judgment motion, that appeal is improper.  See Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 132 (2d Cir. 1999).  The District Court entered its final judgment on the applicability of exclusion (f) when it disposed of the plaintiffs' Rule 50 motion, concluding that "because a reasonable jury would not have a legally sufficient evidentiary basis to find for National Union on the issue of breach of duty to defend, judgment as a matter of law is entered for the plaintiffs on that count against National Union."  J.A. 533.  Accordingly, we construe National Union's appeal as an appeal from the District Court's ruling on the plaintiffs' Rule 50 motion, rather than as an appeal from its denial of summary judgment.  Because we conclude below that the District Court ruling on that legal question was correct, we affirm the court's entry of judgment for the plaintiffs on that issue.

8

f) alleging, arising out of, based upon or attributable to any Wrongful Act occurring prior to [August 23, 1999] or arising out of any subsequent Interrelated Wrongful Act .

J.A. 725-26.

Under Connecticut law, "'[i]t is well established . . . that a liability insurer has a duty to defend its insured . . . if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered.'" Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co., 876 A.2d 1139, 1144 (Conn. 2005) (first two alterations in original) (quoting QSP, Inc. v. Aetna Cas. & Sur. Co., 773 A.2d 906, 914 (Conn. 2001)). Connecticut also requires that the insurer "'provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage,'" even if such facts lie outside the "four corners of the complaint." Id. at 1146 (quoting Fitzpatrick v. Am. Honda Motor Co., 575 N.E.2d 90, 93 (N.Y. 1991)). In determining whether a claim falls within the scope of an insurance policy, the Supreme Court of Connecticut "construes broad policy language in favor of imposing a duty to defend on the insurer," id. at 1145, and requires a defense "[i]f an allegation of the complaint falls even possibly within the coverage," id. at 1144 (emphasis in original) (quotation mark omitted).

With these principles in mind, we affirm the District Court's determination that National Union had a duty to defend the Sowell Claim. Although the Sowell Claim alleges that Gwynn's investment relationship with Sowell began in February 1998, several allegations of wrongful acts are either undated or occurred after August 23, 1999. For example, Sowell's claim of churning did not identify when Gwynn conducted his "excessive, in-and-out trading in technology stocks" or his "trad[ing] extensively on margin," J.A. 992, and whenever Sowell alleged that certain misconduct occurred "during this timeframe," he referenced dates after August 1999. More

9

particularly, Sowell claimed that when his account experienced significant gains in December 1999 and early 2000, it was "[d]uring this timeframe" that Gwynn had refused his requests "to sell at least half of his stock and put the profits in cash" and instead "continued [the] hyperactive trading." J.A. 993. Sowell also alleged that when his account began losing value from April 2000 to 2001, he attempted "during this timeframe" to contact Gwynn, who advised him "that the account was fine" and "not to watch the account." J.A. 993-94. Similarly, Sowell did not identify a time frame for the negligence, fraud, and failure to supervise causes of action – although these presumably occurred after Sowell opened his account in 1998, but before he filed his complaint in 2001. Given the ambiguity in the timing of the alleged wrongful acts within the four corners of the complaint, it is possible that these claims were based on conduct that occurred after August 1999.

National Union argues that exclusion (f) nonetheless precludes coverage because all of the alleged losses "arose out of" two alleged primary wrongful acts that occurred prior to August 23, 1999: (1) Gwynn directing Sowell to sign a power of attorney and give Gwynn discretionary control over the account, and (2) Gwynn's improper solicitation of investments for charter school businesses. We disagree. For the reasons discussed above, given our duty to construe a policy governed by Connecticut law broadly in favor of imposing a duty to defend, it is not clear from the face of the Sowell Claim that all of the alleged losses "arose out of" these two wrongful acts within the meaning of the Policy. Cf. U.S. Auto. Ass'n v. Kaschel, 851 A.2d 1257, 1261 (Conn. App. Ct. 2004) (finding that injuries arose out of an automobile accident because the "accident was the operative event giving rise to the injuries"). Therefore, the Sowell Claim's allegations possibly fell within the scope of the Policy's coverage. Furthermore, National Union did not contest that it received information that Gwynn did not in fact have discretionary control over Sowell's account.

10

Accordingly, the District Court properly determined that National Union had a duty to defend the Sowell Claim, and that it breached that duty. Because we conclude that National Union breached its duty to defend, we now address whether Connecticut law permits the plaintiffs to recover consequential damages for National Union's breach of that duty.

### 2. Consequential Damages

The parties rely on competing interpretations of Missionaries of the Company of Mary, Inc. v. Aetna Casualty & Surety Co., 230 A.2d 21 (Conn. 1967), in arguing their respective positions on the availability of consequential damages for breach of a duty to defend. The plaintiff insured in Missionaries sued the insurer for breaching its duties to defend and indemnify the plaintiff in a negligence action brought by a person who had been injured on the plaintiff's property. Missionaries, 230 A.2d at 22. After determining that the insurer had breached its duty to defend the plaintiff, the Supreme Court of Connecticut reasoned that the plaintiff was entitled to recover the amount of the settlement between the plaintiff and the injured party, without having to prove a causal relationship between the breach and the negative result of the negligence action that "flowed from" the breach. Id. at 26. Thus the court established that "[w]here an insurer is guilty of a breach of its contract to defend, it is liable to pay to the insured not only his reasonable expenses in conducting his own defense but, in the absence of fraud or collusion, the amount of a judgment obtained against the insured up to the limit of liability fixed by its policy." Keithan v. Mass. Bonding & Ins. Co., 267 A.2d 660, 666 (Conn. 1970) (citing Missionaries, 230 A.2d at 26).

The court in Missionaries reached this conclusion despite the possibility that the injury that occurred on the plaintiff's property fell within an exclusion from the insurer's duty to indemnify. Missionaries, 230 A.2d at 25. It appears to have concluded that the insurer, having

11

breached its duty to defend, was estopped from invoking the indemnity coverage exclusion: "[t]he defendant, after breaking the contract by its unqualified refusal to defend, should not thereafter be permitted to seek the protection of that contract in avoidance of its indemnity provisions." Id. at 26.

Pointing to the absence of any subsequent case law permitting a policyholder to recover consequential damages for its insurer's breach of a duty to defend under Connecticut law, National Union urges us to conclude that the measure of damages applied in Missionaries is the only permissible measure for damages in cases involving a breach of a duty to defend. The plaintiffs respond that a breach of a duty to defend is really no more than a breach of a contractual duty, and that neither Missionaries nor any of the cases cited by National Union expressly precludes the availability of traditional contract remedies, including consequential damages.

Connecticut courts have offered virtually no guidance on this issue. In L.F. Pace & Sons, Inc. v. Travelers Indemnity Co., 514 A.2d 766 (Conn. App. Ct. 1986), a Connecticut intermediate appellate court declined to distinguish insurance claims from other contract claims as they relate to the recovery of consequential damages. See id. at 772-74 (affirming jury award of consequential damages for breach of implied contract to act as surety). And in City of West Haven v. Liberty Mutual Insurance Co., CIV. No. N-87-68 (PCD), 1989 WL 190242 (D. Conn. June 1, 1989), a federal district court in Connecticut suggested in dictum that consequential damages may be available based on the facts of that case. The court cited a treatise for the proposition that "[d]amages for wrongful refusal to defend a claim include the negotiated or adjudicated amount of the claim, the insured's expenses in resisting the claim and any additional loss legally traceable to the breach in order that the insured may be made whole." Id. at *2

12

(emphasis added) (quoting 7C Appleman, Insurance Law and Practice, § 4689).[5] At issue in City of West Haven, however, was the recovery of attorneys' fees for the duty to defend action, which the court regarded as a form of punitive or exemplary damages. Id.

National Union asserts that City of West Haven supports its narrow interpretation of Missionaries by limiting the award of attorneys' fees to situations in which "the breach of contract is motivated by bad faith, malice or reckless indifference." Id. We find this argument unpersuasive, if for no other reason than that the court in City of West Haven determined that Missionaries was irrelevant because the plaintiff in that case had withdrawn its request for similar attorneys' fees. Id. In short, no Connecticut decision appears to answer the specific dispositive question presented by this appeal.

Nor do the policy considerations underlying Missionaries compel a decision one way or the other on the availability of consequential damages. We recognize that what appears to be the estoppel rule adopted in Missionaries reflects a preference under Connecticut law for an insurer to provide a defense for claims that are even potentially covered by the relevant policy, under a reservation of rights. See Missionaries, 230 A.2d at 26. The estoppel rule prompts insurers to err on the side of providing a defense. See Keithan, 267 A.2d at 666-67. But contract remedies, which would ordinarily include consequential damages, see Sullivan v. Thorndike, 934 A.2d 827, 833 (Conn. App. Ct. 2007), would also encourage insurers to defend the insured. And the breach of a duty to defend seems fundamentally to be a breach of a contractual duty. Indeed, courts in other states have relied on traditional breach of contract principles to express a similar

---

[5] The treatise upon which City of West Haven relied for this proposition, Insurance Law and Practice, itself cites a federal district court case that merely recites the rule in Missionaries. See United Servs. Auto. Ass'n v. Glens Falls Ins. Co., 350 F. Supp. 869 (D. Conn. 1972).

preference to motivate insurers to provide a defense. See, e.g., Bainbridge, Inc. v. Travelers Cas. Co. of Conn., 159 P.3d 748, 751 (Colo. App. 2006) ("Generally, the appropriate course of action for an insurer who believes it has no duty to defend is to provide a defense . . . under a reservation of its rights to seek reimbursement, or to file a declaratory judgment action after the underlying case has been adjudicated."); Newhouse v. Citizens Sec. Mut. Ins. Co., 501 N.W.2d 1, 6 (Wis. 1993) ("The best approach is for the insurance company to defend under a reservation of rights.").

In sum, Connecticut cases are silent on the availability of these damages in duty to defend cases, a lone federal district court in Connecticut addressed the issue only in dicta, and policy considerations underlying Missionaries fail to provide a decisive answer. Under these circumstances, we are unable to conclude with confidence that Missionaries precludes consequential damages arising out of a breach of the duty to defend.

### 3. Reputational Damages

Even if consequential damages are available, it is not clear that Connecticut law permits plaintiffs to recover reputational damages for breach of a contractual duty to defend. Connecticut appellate courts have not addressed whether such reputational damages are available in a breach of contract action.[6] It is true that some courts in other jurisdictions have held that reputational damages arising from a breach of contract are typically not compensable, as they are "too speculative and could not reasonably be presumed to have been contemplated by the parties when they formed the contract." Rice v. Community Health Ass'n, 203 F.3d 283, 288 (4th Cir.

---

[6] At least one Connecticut trial court has suggested that recovery for loss of reputation arising out of a breach of contract is ordinarily not allowed. See Sutera v. Estate of Washton, No. 556177, 2003 WL 1478788, at *8 (Conn. Super. Ct. Mar. 14, 2003).

2000); see Flynn v. AK Peters, Ltd., 377 F.3d 13, 22 (1st Cir. 2004); Smith v. Positive Prods., 419 F. Supp. 2d 437, 453 (S.D.N.Y. 2005); O'Leary v. Sterling Extruder Corp., 533 F. Supp. 1205, 1209-10 (D. Wis. 1982). But here, the District Court specifically instructed the jury that it should award consequential damages only if the plaintiff proved those damages would have been contemplated by the parties at the time they agreed to the Policy. Without more guidance from the Connecticut courts on this important issue, we are reluctant to decide one way or the other whether a plaintiff can recover reputational damages in such actions under Connecticut law, even when a jury finds that the damages are not speculative and were contemplated at the time the contract was formed.

### 4. Certification

Under the rules of this Court and Connecticut law, we may certify a question to the Supreme Court of Connecticut "if the answer may be determinative of an issue" in a pending case before us "and if there is no controlling appellate decision, constitutional provision or statute." See Conn. Gen. Stat. § 51-199b(d); 2d Cir. Local R. 27.2. We conclude that certification is warranted in this case for at least three reasons. First, "no Connecticut court has ever provided an authoritative answer" to the dispositive questions in this appeal, Caruso v. Siemens Bus. Commc'ns Sys., Inc., 392 F.3d 66, 71 (2d Cir. 2004), and there is no statute that addresses the issues. We have "long recognized that state courts should be accorded the first opportunity to decide significant issues of state law through the certification process." Parrot v. Guardian Life Ins. Co. of Am., 338 F.3d 140, 144 (2d Cir. 2003). Second, an answer to the questions we certify will be determinative of the principal issues on appeal. Third, "[i]nsurance is an important industry in Connecticut," Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency Inc., 644 F.3d 166, 172 (2d Cir. 2011), and the availability of consequential damages in this

15

context implicates significant public policy considerations such that "Connecticut has a strong interest in deciding the issue[s] certified rather than having the only precedent on point be that of the federal court," Parrot, 338 F.3d at 145 (alteration in original) (quotation mark omitted); see Arrowood Indem. Co. v. King, 605 F.3d 62, 79-80 (2d Cir. 2010) ("The case for certification to the Connecticut Supreme Court is especially compelling when the uncertainty pertains to an insurance dispute, given the 'established preeminence' of that court in the field of insurance law."). Under these circumstances, it would be prudent and "in the interest of simplicity, directness and economy of judicial action" to certify the questions presented by this case. Conn. R. App. P. § 82-3.

**CONCLUSION**

For the reasons set forth above, we respectfully certify the following questions to the Supreme Court of Connecticut:

(1) Does Connecticut law permit a policyholder to recover consequential damages in a breach of contract action against an insurer predicated on the insurer's breach of its duty to defend?

(2) If consequential damages are available, may such damages include damages for harm to reputation and loss of income?

The Supreme Court of Connecticut may reformulate this question and address any additional questions that it deems pertinent to this appeal. See Conn. Gen. Stat. § 51-199b(k); Conn. R. App. P. § 82-3.

It is hereby Ordered that the Clerk of Court transmit to the Clerk of the Supreme Court of Connecticut a Certificate, together with this decision and a complete set of the briefs, appendices, and record filed in this Court by the parties. The parties are directed to bear equally

16

such fees and costs that may be required by the Supreme Court of Connecticut. This panel will retain jurisdiction to consider all issues that remain on this appeal and cross-appeal (including issues not discussed in this opinion) once the Supreme Court of Connecticut has either provided us with its guidance or declined certification.

## CERTIFICATE

The foregoing is hereby certified to the Supreme Court of Connecticut pursuant to Connecticut General Statute § 51-199b and Second Circuit Local Rule 27.2, as ordered by the United States Court of Appeals for the Second Circuit.

17